COUNTY OF MOORE, Plaintiff v. HUMANE SOCIETY OF MOORE COUNTY, INC., Defendant

No. COA02-562

(Filed 15 April 2003)

**1. Deeds— reverter clause—not triggered—sufficiency of evidence**

The evidence in a bench trial supported the court's finding that a reverter clause in a deed to property used by the Humane Society was not triggered by the termination of its contract with the County where the plain language of the deed provided a right to re-entry only when the Society ceased to operate an animal shelter and there was testimony about the services the Society continued to offer after termination of the contract with the County.

**2. Deeds— reverter clause—meaning of animal shelter—continued operation**

The trial court correctly concluded in a bench trial that a reverter clause in a deed to property used by the Humane Society was not triggered by the termination of its contract with the County where the court properly considered the ordinary meaning of "animal shelter" and found that the Society was still operating a shelter. The deed did not reflect any intention that the termination of the relationship would trigger the reverter clause.

**3. Contracts— breach—animal shelter site—sufficiency of evidence**

There was insufficient evidence for the trial court to find in a bench trial that the County had breached an agreement with the Humane Society to assist the Society in finding a new site for an animal shelter where the evidence showed that zoning conflicts were the cause of the Society's failure to construct a new facility.

**4. Costs— recovery of real property—reverter clause in deed**

The trial court properly awarded costs to the Humane Society as the prevailing party under N.C.G.S. § 6-18 and N.C.G.S. § 6-19 where the County unsuccessfully claimed the right of re-entry under a reverter clause in a deed to real property occupied by the Society.

Appeal by plaintiff from judgment entered 18 December 2001 by Judge Russell G. Walker, Jr. in Moore County Superior Court. Heard in the Court of Appeals 23 January 2003.

*Womble, Carlyle, Sandridge & Rice, P.L.L.C., by Burley B. Mitchell, Jr., and Mark A. Davis and Moore County Attorneys Lesley F. Moxley, and Brannon Burroughs, for plaintiff-appellant.*

*Adams, Kleemeier, Hagan, Hannah, & Fouts, P.L.L.C., by M. Jay DeVaney, and Edward P. Lord, for defendant-appellee.*

CALABRIA, Judge.

Plaintiff, the County of Moore ("Moore County" or "the County") appeals from judgment entered 18 December 2001 by Judge Russell G. Walker, Jr. ("Judge Walker") in Moore County Superior Court finding Moore County breached its agreement with defendant, the Humane Society of Moore County, Inc. ("Society") by not assisting the Society in locating a site for a new animal shelter. Judge Walker ordered Moore County to pay the Society $75,000.00 in damages. Judge Walker further issued a declaratory judgment that the reverter clause on property previously deeded from Moore County to the Society was not triggered by the termination of the contract between the parties.

In the early 1970s, the Society contracted with the County to operate an animal shelter to care for lost, stray and homeless animals and thereby fulfill the County's statutory obligations. The County permitted the Society to build an animal shelter on its property. In 1990,

the parties renegotiated their contract. As part of the renegotiation, the County deeded the property to the Society. The conveyance was made subject to a reverter clause which provided "in the event property described above ever ceases to be used as an animal shelter for lost, stray or homeless animals, then in such event The County shall have the right to immediately re-enter." In addition, the parties' contract provided that upon termination of the contract "the Society shall cease its activities within thirty (30) days of said termination." Therefore, pursuant to the 1990 contract, upon termination of that contract, the Society would cease operating the animal shelter and the County's right to re-enter would be triggered.

In 1997, the parties again renegotiated the contract, and the clause requiring the Society to cease operating an animal shelter upon termination of the contract was removed. The 1997 contract added provisions which required the County to "assist the Society in locating a mutually acceptable site for a new animal shelter" and upon completion of the new facility "the Society shall convey by Special Warranty Deed the remaining property upon which the Animal Shelter is located back to the County, and the County shall make a one-time contribution of Seventy-Five Thousand [dollars] ($75,000.00) to the Society at that time." The 1997 contract also required the Society convey to the County an easement. Thereafter, the easement was conveyed. In 1998, the parties again renegotiated the contract; it remained substantially the same.

In March 2000, the Society notified the County of its intent to terminate the 1998 contract effective 30 June 2000. The County responded that upon termination the Society would have to vacate the premises, and the County would exercise its right to re-enter. The Society responded that it intended to continue operating an animal shelter, albeit not pursuant to a contract with the County, and therefore the reverter clause was not triggered. Until September 2000, pursuant to an oral agreement, the parties continued operating in accordance with the 1998 contract. In September 2000, the County began operating an animal shelter and sued the Society seeking, *inter alia*, a declaratory judgment that the reverter clause was triggered by termination of the contract. The Society answered and asserted counterclaims including a declaratory judgment to quiet title alleging that the reverter clause had not been triggered and breach of the animal shelter agreement. Summary judgment motions by both plaintiff and defendant were denied. At trial, held 15 October 2001 in the Moore County Superior Court, Judge Walker found the reverter clause was

not triggered, and the County had breached the 1997 and 1998 contracts by failing to assist the Society in locating a new site for a new animal shelter. Judge Walker awarded the Society $75,000.00 in damages.

Moore County appeals Judge Walker's judgment asserting the trial court erred in finding: (I) reverter clause was not triggered; (II) damages in the amount of $75,000.00 for breach of the 1998 contract; and (III) the Society was entitled to costs pursuant to N.C. Gen. Stat. §§ 6-18 and 6-19 (2001).

"Initially, we note that a trial court's findings of fact in a bench trial have the force of a jury verdict and are conclusive on appeal if there is competent evidence to support them, even though there may be evidence that would support findings to the contrary." *Biemann & Rowell Co. v. Donohoe Cos.*, 147 N.C. App. 239, 242, 556 S.E.2d 1, 4 (2001). On the other hand, "[c]onclusions of law are entirely reviewable on appeal." *Creech v. Ranmar Properties*, 146 N.C. App. 97, 100, 551 S.E.2d 224, 227 (2001), *cert. dismissed*, 356 N.C. 160, 568 S.E.2d 190, *cert. denied*, 356 N.C. 160, 568 S.E.2d 191 (2002).

## I. Reverter Clause

[1] Moore County appeals asserting the trial court erred in finding the reverter clause, contained in the 1990 deed conveying the property from the County to the Society, was not triggered by the termination of the County and Society's contract. The County argues the trial court's findings of fact are unsupported by the evidence and the trial court's conclusions of law are the result of errors of law.

We first address the findings of fact. The court found as fact:

2. By deed dated April 26, 1990 (the "Deed"), the County deeded the Property to the Humane Society. The Deed was drafted by the attorney for the County and the transfer of the Property to the Humane Society pursuant to the Deed was unanimously approved by the Moore County Commissioners. The Property was transferred to the Humane Society pursuant to N.C. Gen. Stat. § 160A-279.

3. The Deed contained a reverter clause that provides that should the Humane Society cease to use the Property as an animal shelter for lost, stray or homeless animals, the County shall have the right to re-enter and take possession of the Property. The reverter clause did not state that the County's right to re-

enter the Property is triggered by the termination of the contractual relationship between the County and the Humane Society, does not define 'animal shelter' and does not refer to or incorporate any definition of 'animal shelter.' When it drafted the Deed, the County was aware that it could transfer the Property upon any conditions that it chose to impose.

The court went on to find the parties did not intend to incorporate any particular definition of animal shelter, but that the 1995 edition of Webster's College Dictionary "defines 'shelter' as 'a building serving as a temporary refuge or residence for homeless persons or abandoned animals.' " The court made extensive findings of fact regarding the services the Society rendered and continued to render, including accepting stray animals, housing animals treated cruelly or taken from their owners, holding animals for adoption to the public, and euthanizing unadoptable animals.

Moore County argues the findings of fact are not supported by competent evidence. The plain language of the deed reads:

This conveyance is made upon the condition that *in the event property described above ever ceases to be used as an animal shelter for lost, stray or homeless animals, then in such event The County shall have the right to immediately re-enter upon said premises and take and hold possession of said premises without let or hindrance*; provided, however, the breach of any said conditions or any re-entry by reason of such breach or forfeiture of title to this property by reason of such breach shall not defeat or render invalid the lien of any mortgage or deed of trust made in good faith for value on any of said property; the said right to re-enter or declare a forfeiture of title shall be made subject to the lien of any such mortgage or deed of trust given and created by the Humane Society to secure a debt hereafter contracted or made.

(emphasis added). We find this is competent evidence to support the trial court's findings of fact that the deed provides for a right of re-entry only when the Society has ceased to operate an animal shelter. Moreover, the testimony of Susan Rowe, the executive director of the Society, amply supports the trial court's findings of fact regarding the Society's acceptance, boarding and adoption of lost, stray and homeless animals. Therefore, we hold the trial court's findings of fact are supported by competent evidence, and thus are binding on appeal.

[2] We next address the County's assertion that the conclusion of law regarding the reverter clause was the result of an error of law. The court concluded as a matter of law:

> The actions of the Humane society have not triggered the County's right to re-enter the Property, and the Humane Society holds the Property in fee simple on condition subsequent. The language of the reverter clause in the Deed must be strictly construed against the drafting party, the County, and must be strictly construed to limit forfeiture by the Humane Society. The Court finds that the language of the Deed is unambiguous and that under the plain language of the Deed, the Humane Society is currently using the Property as an animal shelter for lost, stray or homeless animals.

Moore County asserts the trial court erred by not construing the deed in accord with the intention of the parties.

In construing the deed, although "discerning the intent of the parties is the ultimate goal in construing a deed," we look to the language of the deed for evidence of this intent. *Station Assoc., Inc. v. Dare County*, 350 N.C. 367, 373, 513 S.E.2d 789, 794 (1999).

> 'The language of the deed being clear and unequivocal, it must be given effect according to its terms, and we may not speculate that the grantor intended otherwise. 'The grantor's intent must be understood as that expressed in the language of the deed and not necessarily such as may have existed in his mind if inconsistent with the legal import of the words he has used." When terms with special meanings or terms of art appear in an instrument, they are to be given their technical meaning; whereas, ordinary terms are to be given their meaning in ordinary speech.

*Southern Furniture Co. v. Dep't of Transp.*, 133 N.C. App. 400, 403, 516 S.E.2d 383, 386 (1999) (quoting *Parker v. Pittman*, 18 N.C. App. 500, 506, 197 S.E.2d 570, 574 (1973) (citation omitted)). Here, the trial court properly considered the ordinary meaning of the term "animal shelter" and found the Society was still operating an animal shelter. Although it is apparent from the deed that the parties intended to continue their contractual relationship, with the Society providing the County with an animal shelter that fulfilled the County's statutory duties, any intention that termination of this relationship would trigger the reverter clause was not evidenced in the deed. The County certainly could have evidenced its intention in the deed, but chose not to, and this Court may not rewrite the deed in hindsight for the

County. Therefore, we conclude the trial court did not commit an error of law when concluding as a matter of law the reverter clause had not been triggered and the Society lawfully remains on the property operating an animal shelter.

## II. Breach of Contract

[3] Moore County appeals asserting the trial court erred in finding the County breached the 1997 and 1998 agreements with the Society and therefore owes the Society $75,000.00 in damages. Moore County asserts the following arguments: (1) the findings of fact regarding the breach of contract are unsupported by the evidence; (2) the findings of fact regarding the award of damages are unsupported by the evidence; and (3) the contracts are void for lack of a pre-audit certificate as required by N.C. Gen. Stat. § 159-28(a) (2001).

We first address the County's argument that the findings of fact determining the County breached the 1997 and 1998 contracts are not supported by the evidence. The contract provision provides:

[t]he County, including its staff and the Board of County Commissioners, will assist the Society in locating a mutually acceptable site for a new animal shelter, except, with respect to the Board of County Commissioners, in such cases in which assistance could result in a conflict of interest, such as a contested zoning request.

The court made the following finding of fact:

[t]he County did not provide any assistance to the Humane Society in locating an acceptable site for a new facility as required by the 1997 and 1998 contracts. The County located two potential sites for a new Humane Society animal shelter, one near the Moore County landfill and one on Joel Road; however, the County identified both sites to the Humane Society before entering the 1997 Contract.

. . .

During the term of the 1998 Contract, the County owned a piece of property in Carthage. The County is currently building its new animal control facility on that property. However, the County never offered that property to the Humane Society or identified it as a potential site for the Humane Society's new facility.

. . .

The County's failure to assist the Humane Society in locating a site for a new facility is directly responsible for the inability of the Humane Society to find a location for and to construct a new facility. As a direct result of that failure, the Humane Society was unable to transfer the Property to the County during the term of the 1997 and 1998 Contracts and lost the opportunity to receive from the County the $75,000 payment required by those Contracts.

The court then concluded as a matter of law:

[t]he County breached the 1997 and 1998 Contracts by failing to provide assistance to the Humane Society in locating a mutually acceptable piece of property on which the Humane Society could build a new facility. The Humane Society has been damaged by the County's breach of contract in the amount of $75,000.

Despite these findings and conclusion, the evidence tended to show that although Moore County was not active in assisting the Society, the cause of the Society's failure to construct a new facility was not due to inability to locate land but rather conflicts in rezoning the land.

We note that the precise duty imposed upon the County by the clause "assist in locating" is open to interpretation. David McNeil, the Moore County Manager, testified he thought compliance with the provision required the County to "see[] if we had any county-owned property" and offer any such property to the Society. On the other hand, the Society asserted the County breached the contract by never providing assistance. Despite this assertion, the uncontradicted evidence demonstrated the Society never requested assistance from the County in locating property.[1] Moreover, McNeil explained that although no one from the Society approached the County to request assistance in locating a new site, the County reasonably did not actively seek to assist the Society because:

McNEIL: the Humane Society ha[d] zeroed in on a site on NC 73 that they were seeking re-zoning for. We pretty much thought that

---

1. For example, Richard Frye, the private real estate broker for the Society testified he never asked the County for assistance in locating property, although he testified: "I've talked with the county manager a couple of times in his office concerning Humane Society expenses, philosophies, different things concerning the Humane Society." Corrine O'Conner, President of the Humane Society of Moore County since 1998, also testified that the only assistance she requested was for rezoning and not locating property.

was the property they were going to try to acquire. So we didn't actively pursue any other properties. Then after that did not materialize, we later learned there was a property in Southern Pines they had zeroed in on and were seeking proper zoning for that and therefore we didn't pursue any other.

COUNTY ATTORNEY: Why wouldn't you pursue others?

McNEIL: We didn't see a need. We thought they had identified property that they wanted to do this on and build their new facility.

Corrine O'Conner, President of the Society since 1998, explained the Society was not only looking for the County's assistance in locating properties but was "looking at whatever assistance [the County] could give us."

In addition to the conflict of what the contract required from the County, the evidence established that inability to locate property did not cause the Society to be unable to build a new shelter. O'Conner testified that the Society's trouble in erecting a new animal shelter was not due to difficulty in locating properties. Rather, having property rezoned was the obstruction. Richard Frye, the real estate broker for the Society, testified that at the conditional-use hearing for the NC 73 land, citizens from the neighboring area opposed it and there was a "big battle with the neighbors." Diana Douglas, President of the Society from 1996 through 1997, testified regarding the attempted rezoning of the NC 73 property, "we had it surveyed and were really hopeful for getting it, but there was—a doctor owned the property across the street and he was not thrilled to have us there, nor were the surrounding residents. As a consequence, it never came to fruition."

The Society sought assistance from the County solely on rezoning issues:

O'CONNER: I spoke to him [the Chairman of the County Commissioners] in regard to the property we're trying to get in Southern Pines. He told me Southern Pines was difficult to work with and maybe we should look in Aberdeen.

. . .

COUNTY ATTORNEY: Do you think that [when he told you to check out Aberdeen] was advice?

O'CONNER: I don't think it was very helpful. . . . Was that advice? Yes; I would say it was advice, but I didn't think it was helpful advice.

In addition to seeking advice from the County Commissioners, O'Conner also sought advice from McNeil:

SOCIETY ATTORNEY: Did you ever request of Mr. McNeil assistance in finding property for a new site for the Humane Society?

O'CONNER: I wouldn't say I requested his assistance. I took him the map of the property on highway 73 and showed him what we were looking at trying to purchase and tried to get his feelings on it, and he said he didn't see a problem, but it was up to the planning board [for rezoning], it really wasn't his thing. I just told him I wanted to get his feelings on it.

The evidence established that little action was taken by either party to effectuate the "assist in locating" provision of the contract. However, there is insufficient evidence for the court's finding that the County "is directly responsible for the inability of the Humane Society to find a location for and to construct a new facility." Accordingly, we reverse the trial court.

Since there was insufficient evidence for breach of the contract, we need not address the County's remaining assignments of error regarding the validity of the contracts and the insufficiency of evidence for the award of damages.

### III. Award of costs

[4] Moore County appeals asserting the trial court erred in awarding the Society, as the prevailing party, costs pursuant to N.C. Gen. Stat. §§ 6-18 and 6-19. Section 6-18 provides that "[c]osts shall be allowed of course to the plaintiff, upon a recovery, in the following cases: (1) In an action for the recovery of real property" and section 6-19 provides the same for the defendant if the plaintiff is not entitled to costs. In this case, the Society recovered the real property. Therefore, pursuant to the statutes, the trial court properly awarded costs to the Society.

Affirmed in part, reversed in part.

Judges MCGEE and HUNTER concur.