INMAN, Judge.
*513 Kathleen M. Waddell ("defendant") appeals from judgment quieting title in favor of Donna Simmons ("plaintiff"), defendant's neighbor, to a thirty-foot-wide strip of land known as the Driveway Corridor, located adjacent to their respective properties. In this case, the parties argue that rights to the Driveway Corridor were at varying times implied by necessity, created by deed, completely forgotten, and seemingly reclaimed. The issues on appeal pertain to the legal significance of the many conveyances of land comprising the Driveway Corridor and its surrounding parcels. Solving the legal puzzle also requires this Court to consider whether and in what manner the Driveway Corridor was bequeathed in a will executed by one of its series of owners.
After careful review, we affirm the trial court's order quieting title in favor of plaintiff.
Factual and Procedural Background
More than a half century ago, defendant's and plaintiff's properties were part of a single parcel consisting of 47.25 acres owned by Helen K. Butler and Lurline Willis ("Butler and Willis") as tenants in common. In the late 1950s, Butler and Willis conveyed one tract within the parcel to James and Margaret Douglas and conveyed an adjacent tract to Jesse and Newell Pritchett ("the Pritchetts"). Each of these tracts abutted the public road. (Due to the difficulty in visualizing the complete title histories relevant to this case, we have included our own rudimentary visual aids to assist the reader.)[1]
In 1962 and 1963, Butler and Willis conveyed two additional adjacent parcels of land-separated from the public road by the Pritchett and Douglas tracts-to Ralph and Natalie Dodge ("the Dodge tract").
*514 At that time, the Dodge tract was "landlocked," meaning that it had no access to the public road.[2]
*664 Also in 1963, Butler and Willis conveyed a parcel of land sharing a common border with both the Pritchett and Dodge tracts to Lawrence and Carolyn McCrimmon ("the McCrimmon tract").[3] Included in the deed *665 was a 30-foot roadway easement, hereinafter referred to as the Driveway Corridor, paralleling the Pritchett common line and connecting the Dodge tract to the public road. The deed specified that this easement was intended to be used for the joint benefit of the McCrimmons and the Dodges. This is the first documented appearance of the Driveway Corridor in a deed. Thus, as a result of the deed, the McCrimmons held title to the tract in fee simple, subject to the easement over the Driveway Corridor benefitting the Dodges. *515 In 1966, the McCrimmons conveyed the entirety of their land to C.J. Simons ("Simons"), including the easement over the Driveway Corridor.[4] *666 The 1969 deed.
In 1969, the executor of Simons's estate conveyed Simons's tract to the Dodges. Included in this deed, registered in book 318 page 59 of the Moore County registry ("the 1969 deed"), was language identical to that used in the prior deeds to create the easement for the Driveway Corridor. As a result, the Dodges owned, in addition to their initially landlocked parcels, the parcel sharing an eastern border with the Pritchett tract. The conveyance thus left the Dodges holding a fee simple interest in the Driveway Corridor.[5]
*667 *516 In 1970, the Dodges conveyed a portion of the former McCrimmon tract to Jack and Nell Stoudenmire. The deed specified that the Stoudenmire tract would only run along the western border of the Driveway Corridor. It is undisputed that the land comprising the Driveway Corridor itself was not conveyed to the Stoudenmires.[6]
*668 In 1983, the Pritchetts conveyed their tract to plaintiff and plaintiffs husband. The language of this deed is not in dispute.
The 1983 Waddell deed.
Also in 1983, the Dodges conveyed their initial parcel to defendant's husband, Roger Waddell ("Dr. Waddell"). This deed was recorded in Book 500, page 542 of the Moore County registry ("the 1983 Waddell deed") and provided that the Dodges "also" conveyed their "interest in a roadway easement 30 feet wide, as spelled out in Deed recorded in Deed Book 318 at page 39 in the Moore County Registry [the 1969 deed]."[7]
*669 *517 For more than twenty years after the 1983 conveyance, defendant used the Driveway Corridor, running alongside plaintiffs property, for ingress and egress to her home. Dr. Waddell testified in deposition that he always considered the Driveway Corridor to be a "common easement" rather than an extension of their property. Defendant and her husband divorced in 2004, and as part of an equitable distribution settlement, defendant was left with title to the Waddell tract.
On 15 December 2011, plaintiff filed a complaint in Moore County District Court. Plaintiff initially sought injunctive relief to prevent defendant from blocking her access to the Driveway Corridor and a declaratory judgment that she has a prescriptive easement over the land from repeated use.
While preparing for trial, plaintiffs attorney contacted the personal representative of Natalie Dodge's estate, Rodney Guthrie ("Mr. Guthrie"). Plaintiff explained to Mr. Guthrie that he believed Mrs. Dodge had died seized of the Driveway Corridor, and he asked Mr. Guthrie reopen the estate, which had previously been settled shortly after her death in 1995. At the time Mrs. Dodge's will was probated, Mr. Guthrie had no knowledge that she owned any real property.
Based on this information, Mr. Guthrie petitioned the Clerk of Court to reopen the estate on 5 December 2012. On that same day, Mr. Guthrie obtained an order from the Moore County Clerk of Superior Court, by signature of an assistant clerk, reopening Mrs. Dodge's estate. He then conveyed the *670 land comprising the Driveway Corridor to plaintiff for $1,500.00, the proceeds of which he split evenly between Bible Alive Ministries, Inc. and Carolina Bible College of Fayetteville, Inc. ("the Dodge estate beneficiaries"), in accordance with Mrs. Dodge's will.
On 10 December 2012, the day that trial was set to begin, plaintiff moved for a continuance so that she could amend her complaint to include a claim of quiet title based on the recent conveyance from Mrs. Dodge's estate. The parties entered into a stipulated order continuing the trial date and agreeing to sever their claims and first, proceed to trial solely on the issue of quieting title. The parties also stipulated that, regardless of the outcome, defendant would continue to have an easement over the Driveway Corridor to access the public road.
The non-jury trial commenced during the civil term of 24 February 2014 and was completed over a series of dates concluding on 20 March 2014. After considering witness testimony and other evidence, as well as the arguments by counsel and legal authorities submitted, the trial *518 court on 2 May 2014 entered its order quieting title to the Driveway Corridor in favor of plaintiff.
At trial, plaintiff argued that: (1) the 1983 Waddell deed between the Dodges and Dr. Waddell only conveyed an easement in the Driveway Corridor, not ownership of the tract in fee simple; (2) because the Dodges previously owned the property as tenants by the entirety, Mrs. Dodge obtained full ownership of the Driveway Corridor upon her husband's death in 1984; (3) Mr. Guthrie obtained title to the Driveway Corridor by operation of Mrs. Dodge's will when she died in 1995; and (4) plaintiff holds title in the Driveway Corridor by virtue of the conveyance from Mr. Guthrie in 2012.
Defendant contended at trial that when the Dodges transferred their initial tract to her husband with the 1983 Waddell deed, they also conveyed the Driveway Corridor in fee simple. Therefore, defendant contended, because she had filed her interest in the land in 2004 as part of the equitable distribution settlement, her interest in the Driveway Corridor was superior to plaintiffs interest and rendered the conveyance from the Dodge estate to plaintiff a nullity. In the alternative, defendant argued that she obtained title to the Driveway Corridor via a quitclaim deed from the Dodge estate beneficiaries in 2011.
The trial court rejected defendant's arguments and quieted title in favor of plaintiff. In its ultimate findings, the trial court determined that the 1983 Waddell deed conveyed only an easement in the Driveway Corridor from the Dodges to Dr. Waddell, Mrs. Dodge retained ownership of the Driveway Corridor after her husband's death, and the conveyance of the Driveway Corridor from Mr. Guthrie to plaintiff was legally effective to pass title. Based on these findings, the trial court concluded that plaintiff met her burden of establishing a superior claim in the Driveway Corridor to defendant's and quieted title in her favor. Defendant filed timely notice of appeal.
Standard of Review
We review a judgment entered after a non-jury trial to determine "whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." Cartin v. Harrison, 151 N.C.App. 697, 699, 567 S.E.2d 174, 176 (2002) (internal quotation marks omitted). "Our review of the trial court's conclusions of law is de novo. " Johnson v. Bd. of Trs. Of Durham Tech. Cmt. College, 157 N.C.App. 38, 47, 577 S.E.2d 670, 675 (2003). As explained in more detail below, the interpretation of *519 documents, including deeds and wills, is generally an issue of law unless a document is ambiguous on its face and, as such, is also reviewable de novo.
I. Legal Effect of the 1983 Waddell Deed
Defendant first argues that the trial court erred by concluding that the conveyance in the 1983 Waddell deed transferred to Dr. Waddell only an easement over the Driveway Corridor rather than title in fee simple.[8] We disagree.[9]
*671 With respect to this issue, defendant contends that the 1983 Waddell deed was ambiguous, and that any ambiguities in a deed must be interpreted in favor of the grantee. See generally Reed v. Elmore , 246 N.C. 221, 224, 98 S.E.2d 360, 362-63 (1957) ("[I]n resolution of doubt in interpretation the instrument must be construed most favorably to the grantee."). Defendant argues that the 1983 Waddell deed, when interpreted in the grantee's favor, transferred title to the Driveway Corridor to Dr. Waddell in fee simple and not, as the trial court concluded, as an easement. Because Dr. Waddell subsequently transferred his interest to defendant in their equitable distribution settlement, defendant claims that her title should have been determined by the trial court to be superior to plaintiff's.
*520 "An express easement in a deed, as in the instant case, is, of course, a contract." Williams v. Skinner, 93 N.C.App. 665, 671, 379 S.E.2d 59, 63 (1989). "When courts are called upon to interpret deeds or other writings, they seek to ascertain the intent of the parties, and, when ascertained, that intent becomes the deed, will, or contract." Franklin v. Faulkner, 248 N.C. 656, 659, 104 S.E.2d 841, 843 (1958). "The grantor's intent must be understood as that expressed in the language of the deed[.]" County of Moore v. Humane Soc'y of Moore County, Inc., 157 N.C.App. 293, 298, 578 S.E.2d 682, 685 (2003) (quotation omitted). "However, if the language is uncertain or ambiguous, the court may consider all the surrounding circumstances, including those existing when the document was drawn, ... and the construction which the parties have placed on the language, so that the intention of the parties may be ascertained and given effect." Century Commc'ns, Inc. v. Hous. Auth. of City of Wilson, 313 N.C. 143, 146, 326 S.E.2d 261, 264 (1985).
"A contract which is plain and unambiguous on its face will be interpreted as a matter of law by the court." Dept. of Transportation v. Idol, 114 N.C.App. 98, 100, 440 S.E.2d 863, 864 (1994). "If the agreement is ambiguous, however, interpretation of the contract is a matter for the jury." Dockery v. Quality Plastic Custom Molding, Inc., 144 N.C.App. 419, 422, 547 S.E.2d 850, 852 (2001). Ambiguity exists where the contract's language is reasonably susceptible to either of the interpretations asserted by the parties. Glover v. First Union Nat'l Bank, 109 N.C.App. 451, 456, 428 S.E.2d 206, 209 (1993). Here, the trial court entered "Ultimate Findings," including the determination that the Dodges conveyed merely an easement over the Driveway Corridor to Dr. Waddell, not title to the land in fee simple. The trial court's reasoning is based solely on an analysis of the language in the 1983 Waddell deed and the map attached and incorporated in the deed by reference. Accordingly, this is a legal issue reviewable de novo.
*672 The language of the 1983 Waddell deed is not uncertain or ambiguous, and it supports the trial court's conclusion that it conveyed only an easement interest to Waddell. The 1983 Waddell deed provides the following:
That certain tract or parcel of land situated between the Ft. Bragg Reservation and Southern Pines, and lying on both sides of James Creek and Beginning at the concrete monument, common with Grantors, Will Pait and in the old Bowers line.... 409.68 feet from the beginning point of Grantors 4.04 acre tract which is also the center of SR 2098 and running thence along the old Bowers line *521 crossing James Creek [ ] 869.72 feet to a concrete monument; thence crossing James Creek again [ ] 635.0 feet to an iron stake; thence with the rear line of Douglas [ ]204.9 feet to an iron stake; thence [ ] 19.35 feet to an iron stake; thence along the Prichard [sic] line [ ] 286.1 feet to an iron stake; thence [ ] 61.01 feet to an iron stake; thence with the line of Stoudenmire 263.72 feet to a concrete monument; thence continuing [ ] along Pait's line 60.0 feet to the point of Beginning, containing 5.4 acres more or less, as described on a survey plat made by C.H. Bige and Associates, a parcel copy of which is attached to and made a part of this Deed.
Also conveyed is Grantors [sic] interest in a roadway easement 30 feet wide, as spelled out in Deed recorded in Deed Book 318 at page 59 in the Moore County Registry.
(Emphasis added).
The deed referenced in the conveyance language italicized above is the 1969 deed from the Simons estate to the Dodges, which described "a roadway easement 30 feet wide paralleling the Pritchett common line ... which easement was established for the joint benefit of" the McCrimmons and the Dodges.
The survey plat made part of the 1983 Waddell deed appeared as follows:
*673 *522 Defendant argues that the deed is ambiguous and that, construed in favor of the grantee, it conveyed a fee simple interest in the Driveway Corridor. We disagree, based on both the language of the deed and the survey plat made part of the deed.
*523 The holding in Pearson v. Chambers, 18 N.C.App. 403, 197 S.E.2d 42 (1973), is instructive here. In Pearson, this Court was tasked with determining whether a deed transferred merely an easement over a strip of land or title to the land in fee simple. Id. at 404, 197 S.E.2d at 43. The deed in question contained a granting clause with a metes and bounds description of a 37-acre tract of land, followed by a "Second Tract consisting *674 of a right-of-way to the above tract[.]" Id. at 411, 197 S.E.2d at 44. This Court held:
It is entirely consistent with the granting clause, which clearly conveyed the thirty-seven-acre tract in fee, to interpret the additional language following the description of the thirty-seven-acre tract as conveying merely an easement appurtenant to said tract. Such an interpretation gives effect to the more usual connotation of the term "right-of-way" as denoting an easement for passage over a described strip of land rather than as describing fee title to the strip. Certainly such an interpretation cannot be said to be irreconcilable with other portions of the deed which, by this interpretation, are still given full effect.
Id.
Like the deed in Pearson, the granting clause of the 1983 Waddell deed plainly conveys title to the upper 5.4 acre tract in fee simple. The metes and bounds description of the land in the first paragraph of the deed matches the boundary of the 5.4-acre upper tract depicted in the attached survey plat exactly. Nowhere in the metes and bounds description of the granting clause is any reference to or measurement of the Driveway Corridor. Further, the grantors specifically transferred their interest in a "roadway easement 30 feet wide, as spelled out in Deed recorded in Deed Book 318 at page 59 in the Moore County Registry." Even more compelling than "the more usual connotation of the term 'right-of-way' " in Pearson, the grantors specifically used the term "roadway easement" to describe what was being transferred. This easement is also reflected in the survey plat attached to the deed, which refers to the Driveway Corridor as a "30 foot roadway easement."[10]
*524 We must, if possible without resorting to parol evidence, determine the grantors' intent based on the four corners of the deed. See County of Moore , 157 N.C.App. at 298, 578 S.E.2d at 685. The language used in the 1983 Waddell deed is plain and unambiguous. It directly references the metes and bounds description of the Driveway Corridor in the 1969 deed, specifically refers to this interest as a "roadway easement," and sets out that transfer in a paragraph separate from the clause granting title to the 5.4-acre tract in fee simple. The survey plat made part of the deed reflects this interpretation precisely. Given these facts, we affirm the trial court's conclusions that the grantors intended to convey only an easement over the Driveway Corridor, not title to that land in fee simple.
Even if we were to conclude that the 1983 Waddell deed is ambiguous, extrinsic evidence of the parties' intent points toward the same conclusion. Defendant herself averred that she believed she had only an "ingress and egress roadway easement" over the Driveway Corridor. Dr. Waddell testified in his deposition that he did not consider the Driveway Corridor to be "his"; he thought it was a "common easement." Prior to the institution of this litigation, defendant's own attorney conducted a thorough review of the title histories of the surrounding properties and concluded that: (1) the Driveway Corridor was on neither the Stoudenmire nor Pritchett tracts; (2) the property was still titled in the Dodges; and (3) defendant had only an easement over the Driveway Corridor.
In light of the plain and definite language of the deed, Century Commc'ns, Inc., 313 N.C. at 146, 326 S.E.2d at 264, we *675 affirm the trial court's conclusions that (1) the 1983 Waddell deed conveyed only an easement over the Driveway Corridor to Dr. Waddell, and (2) the Dodges retained ownership of the Driveway Corridor after that conveyance.[11] *525 We must now address whether the purported transfer of the Driveway Corridor from Mr. Guthrie to plaintiff was legally effective.
II. Existence of Order Reopening Mrs. Dodge's Estate
Defendant's remaining arguments on appeal pertain to the legal effect of the purported transfer of the Driveway Corridor from Mrs. Dodge's personal representative, Mr. Guthrie, to plaintiff, more than a decade after Mrs. Dodge's death. Defendant first contends that because the record contains no indication that the order reopening Mrs. Dodge's estate was entered into evidence, the trial court's legal conclusion that Mr. Guthrie properly conveyed the Driveway Corridor to plaintiff was erroneous. We disagree.
This argument is premised on the assumption that either Mr. Guthrie never acquired an order reopening Mrs. Dodge's estate, or that the order was never presented to the trial court.[12] However, at the trial on 24 February 2014, the trial court took judicial notice of the entire contents of Mrs. Dodge's estate file. There is no reason to believe that the order reopening Mrs. Dodge's estate filed two years before the evidentiary hearing would not have been included in that estate file. Defendant's argument that plaintiff has failed to prove that specific order's existence in the judicially noticed estate file lacks merit. The only case defendant cites in support of this contention is Waters v. N.C. Phosphate Corp., 50 N.C.App. 252, 273 S.E.2d 517 (1981), which is readily distinguishable. This Court in Waters held that the trial court erred in granting the defendant's motion for directed verdict where a prior judgment crucial to the defendant's case was not entered into evidence at trial, there was no indication that the trial court took judicial notice of the judgment, and the judgment was not before the Court on appeal. Id. at 257-58, 273 S.E.2d at 520-21. Here, unlike in Waters, the trial court took judicial notice of the entire contents of Mrs. Dodge's estate file, which, of course, should have included the previous order reopening her estate. Defendant's reliance on Waters is misplaced.
Furthermore, plaintiff filed both a supplement to the record in accordance with North Carolina Rule of Appellate Procedure 9(b)(5) (2015) containing the clerk of court's order filed on 5 December 2012 reopening Mrs. Dodge's estate and a motion for this Court to take judicial notice of *526 that order should we find the Rule 9(b)(5) supplement insufficient. The order states the following:
After considering the petition of the Personal Representative, Rodney A. Guthrie, the Court finds that it appears that real property of which Ms. Dodge died seized exists and that necessary acts remain unperformed in the Estate of Natalie Cashwell Dodge. The Court therefore finds that grounds exist under N.C. Gen.Stat. § 28A-23-5 justifying the reopening of said estate.
WHEREFORE it is ordered that the Estate of Natalie Cashwell Dodge should be and is hereby reopened. This the 5th day of December 2012.
Because the existence of the order reopening Mrs. Dodge's estate is a matter of public record and is not subject to reasonable dispute, we grant plaintiff's motion. See *676 State v. Thompson , 349 N.C. 483, 497, 508 S.E.2d 277, 286 (1998) ("This Court may take judicial notice of the public records of other courts within the state judicial system.").
III. Effect of Mrs. Dodge's Will
Defendant's final argument on appeal is that the conveyance of the Driveway Corridor from Mr. Guthrie to plaintiff in 2012 was ineffective to transfer title to the property because defendant had received a quitclaim deed to the Driveway Corridor from the Dodge estate beneficiaries in 2011. Based on the quitclaim deed, defendant contends that even if Mrs. Dodge's estate was reopened in 2012, there was nothing for Mr. Guthrie to convey. We are unpersuaded.
"The interpretation of a will's language is a matter of law. When the parties place nothing before the court to prove the intention of the testator, other than the will itself, they are simply disputing the interpretation of the language which is a question of law." Cummings v. Snyder, 91 N.C.App. 565, 568, 372 S.E.2d 724, 725 (1988) (internal citations omitted). Because the application of Mrs. Dodge's will turns solely on its language, defendant's contentions present questions of law which we review de novo . See Craig v. New Hanover Cnty. Bd. of Educ. , 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009).
"The intent of the testator is the polar star that must guide the courts in the interpretation of a will." Coppedge v. Coppedge, 234 N.C. 173, 174, 66 S.E.2d 777, 778 (1951). "This intent is to be gathered from a consideration of the will from its four corners, and such intent should be given *527 effect unless contrary to some rule of law or at variance with public policy." Id. Finally, "[w]here the language employed by the testator is plain and its import is obvious, the judicial chore is light work; for in such event, the words of the testator must be taken to mean exactly what they say." McCain v. Womble, 265 N.C. 640, 644, 144 S.E.2d 857, 860 (1965) (quotation marks and citation omitted).
The language of Mrs. Dodge's will, like that of the deeds previously addressed in this case, is plain and unambiguous. The relevant portions provide:
ITEM FOUR: All the rest, residue and remainder of my estate, wherever situate, of which I may die seized or possessed, remaining after the payment of all my legal debts and funeral expenses and administrative expenses, I give, devise and bequeath to my Personal Representative, and direct that my Personal Representative shall administer and dispose of my said residuary estate in accordance with the terms and provisions set forth and contained in the next succeeding Item of this my Last Will and Testament.
ITEM FIVE: I direct my Personal Representative to divide my residuary estate into two (2) equal parts and to dispose of them as follows:
A. One (1) equal part to be delivered to the CAROLINA BIBLE COLLEGE, in Fayetteville, North Carolina, as an endowment, the principal of which shall be kept intact and only the income therefrom may be expended; and
B. One (1) equal part to be delivered to the BIBLE ALIVE MINISTRIES, in Fayetteville, North Carolina, as an endowment, the principal of which shall be kept intact and only the income therefrom may be expended.
Mrs. Dodge's will also allowed Mr. Guthrie "in his sole and absolute discretion" to "sell, mortgage, lease, exchange or convey all or any part" of Mrs. Dodge's estate, as well as providing him "the continuing absolute discretionary power to deal with any property, real or personal held in [Mrs. Dodge's] estate."
Defendant refers to the beneficiaries of Mrs. Dodge's will as "devisees" in her brief on appeal. In so doing, she argues that N.C. Gen.Stat. § 28A-15-2(b) worked to vest title in the Driveway Corridor with the beneficiaries, relating back to Mrs. Dodge's death. See *528 N.C. Gen.Stat. § 28A-15-2(b) (2013) ("[T]he title to real property of a decedent devised under a valid probated will becomes vested in the devisees and shall relate back to the decedent's death [.]"). Therefore, defendant contends that the quitclaim deed executed in 2011 ostensibly transferring the Driveway Corridor from the beneficiaries to defendant *677 should have been sufficient to quiet title in defendant's name.
Defendant's argument misconstrues the plain language of Mrs. Dodge's will. Item Four explicitly states that any property of which Mrs. Dodge may die seized (here, the Driveway Corridor) is "give[n], devise[d] and bequeath[ed]" to Mr. Guthrie so that he may "administer and dispose of [ ] said residuary estate" in accordance with Item Five of the will. Thus, Mr. Guthrie was the sole devisee under Mrs. Dodge's will. Contrary to defendant's argument, section 28A-15-2(b) merely leads us conclude that title in the Driveway Corridor became vested in Mr. Guthrie at the time of Mrs. Dodge's death, not that the beneficiaries had any right to transfer the Driveway Corridor to defendant in 2011. That quitclaim deed is without legal effect, because at the time it was executed, title in the Driveway Corridor was vested in Mr. Guthrie, not the beneficiaries.
Mr. Guthrie, after having been informed of Mrs. Dodge's ownership interest in the Driveway Corridor by plaintiff's attorney, promptly petitioned the clerk of court to reopen her estate, acquired an order from the clerk, and then conveyed the Driveway Corridor to plaintiff in exchange for $1,500.00, which he split equally between beneficiaries identified by Mrs. Dodge in Item Five of her will. This transaction was completed in accordance with Mrs. Dodge's intent as reflected by the clear language of her last will and testament, and it was undertaken in accordance with North Carolina law.
Defendant has offered no further argument attacking the legal validity of the transfer from Mr. Guthrie to plaintiff, other than to suggest that if defendant had known about this conveyance she would have offered more than $1,500.00. However, defendant concedes that whether to provide notice of the reopening of Mrs. Dodge's was a matter solely within the discretion of the clerk of court. See N.C. Gen.Stat. § 28A-23-5 (2013) (stating that the clerk of superior court may reopen an estate "without notice or upon such notice as the clerk of superior court may direct"). Although no notice to defendant was given, there is nothing to suggest that the lack of notice constituted an abuse of that discretion.
*529 Conclusion
Based on the foregoing analysis, we affirm the trial court's order quieting title to the Driveway Corridor in favor of plaintiff.
AFFIRMED.
Judges BRYANT and DAVIS concur.

Although the trial court labeled its determinations regarding the interpretation of the 1983 Waddell deed as "ultimate findings," they are actually conclusions of law, because they were reached by "application of fixed rules of law." See Quick v. Quick , 305 N.C. 446, 451-52, 290 S.E.2d 653, 657-58 (1982) (noting that the "line of demarcation between ultimate facts and legal conclusions is not easily drawn"); see also Westmoreland v. High Point Healthcare, Inc. , 218 N.C.App. 76, 79, 721 S.E.2d 712, 716 (2012) ("The labels 'findings of fact' and 'conclusions of law' employed by the trial court in a written order do not determine the nature of our review.").

Defendant also argues that any easement over the Driveway Corridor held by the Dodges was extinguished by the doctrine of merger when they acquired the Simons tract via the 1969 deed. (See footnote 5.) See also Patrick v. Jefferson Standard Life Ins. Co ., 176 N.C. 660, 670, 97 S.E. 657, 661 (1918) (noting that "an owner of land cannot have an easement in his own estate in fee"). We need not delve into the doctrine of merger to resolve this case. Both plaintiff and defendant agree that the Dodges owned the Driveway Corridor in fee simple before executing the 1983 Waddell deed. By holding title to the Driveway Corridor in fee simple, the Dodges had the option of conveying that land to Dr. Waddell outright or transferring only an easement in the Driveway Corridor and retaining the fee simple interest subject to an easement. See, e.g ., Builders Supplies Co. v. Gainey , 282 N.C. 261, 266, 192 S.E.2d 449, 453 (1972) (noting that an easement is a "right to make some use of land owned by another without taking a part thereof"). Therefore, regardless of the doctrine of merger, as fee simple successors in title to the Simons tract, which included a fee simple interest in the Driveway Corridor, the Dodges had the right to create an easement in that tract or a portion of it, independent of any easement they had previously enjoyed before the conveyance from the Simons estate.

Defendant also contends that the deed is ambiguous because the survey plat erroneously places the Driveway Corridor on the Pritchett tract. We are not persuaded that the survey plat is erroneous. The Driveway Corridor only appears to be on the Pritchett tract because the surveyor chose to place the dashed line indicating an easement along that common border. At the time the survey plat was drawn, the Driveway Corridor was no longer burdening any other larger pieces of land. Rather, it was the last remaining vestige of the Dodge tract. Regardless of where the surveyor chose to place dashed lines indicating the easement, the survey plat accurately reflects that the Pritchett tract was not burdened by the Driveway Corridor. The plat shows that the middle southern border of the Waddell tract, running with both the Pritchett tract and the Driveway Corridor, is 285 feet. This is entirely consistent with the deed from the Pritchetts to plaintiff, showing that the northern border of their tract shared with the Waddell tract is 255 feet. That difference of 30 feet is the Driveway Corridor, as is reflected accurately in the survey plat. Therefore, we are not persuaded that the survey plat is inaccurate.

Defendant's argument that the trial court improperly substituted expert testimony for its own legal conclusions is without merit. Defendant not only failed to object to the admission of expert testimony on the legal effect of the deeds in this case, thus failing to preserve this issue for appellate review, Dogwood Dev. and Mgmt. Co., LLC v. White Oak Transport Co., Inc., 362 N.C. 191, 195-96, 657 S.E.2d 361, 364 (2008), but she also called her own expert witness to testify to the same. Any error in the trial court's admission of the expert testimony was harmless to defendant, and we will not disturb the trial court's order on this ground. See N.C. Gen.Stat. § 1A-1, Rule 61 (2015).

For example, defendant contends that "[t]here is no order from the clerk reopening the Dodge Estate which would be required for the personal representative to subsequently transfer property out of the Dodge Estate."