IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-1189

Filed: 6 June 2017

Onslow County, No. 14 CVS 4011

KINGS HARBOR HOMEOWNERS ASSOCIATION, INC., Plaintiff,

v.

ROY T. GOLDMAN and wife, DIANA H. GOLDMAN, Defendants.

Appeal by defendants from order entered 18 July 2016 by Judge Jay D. Hockenbury in Onslow County Superior Court. Heard in the Court of Appeals 20 April 2017.

> *Cranfill Sumner & Hartzog, LLP, by Regan S. Toups and Elizabeth King, and Marshall Williams & Gorham, LLP, by Charles D. Meier, for plaintiff-appellee.*
>
> *Robert W. Detwiler for defendant-appellants.*

TYSON, Judge.

Defendants, Roy and Diana Goldman ("the Goldmans"), appeal from the trial court's denial of their motion for summary judgment and grant of the Kings Harbor Homeowners Association, Inc.'s ("the HOA") motion for summary judgment. We reverse and remand.

I. Background

Kings Harbor is a planned residential community located in Onslow County North Carolina, developed by Industrial Homes, Inc. ("the Developer"). Evidence

tends to show the Developer intended to provide access to Kings Creek as an amenity for the Kings Harbor lot owners. On 12 August 2005, the Developer recorded a map entitled "Final Plat for King's Harbor II." The map identifies a "10' Pedestrian Walkway Easement" located on Lot 37, running from the HOA maintained street to the creek boundary of Lot 37. The maps do not show any easement or pier extending into the creek. The pier and deck at issue was built years after the map was recorded. The Developer recorded a revised map five years later, for the purpose of showing removal of off-site septic systems. Otherwise, the original and revised maps are identical.

The same day the original map was recorded, 12 August 2005, the Developer also recorded the "Declaration of Restrictive Covenants Kings Harbor II" ("the Declaration"). Paragraph 11 of the Declaration, entitled "Common Area," states:

> All lot owners shall have use of the walkway on Lot 37 as shown on the recorded plat. Repairs and maintenance of said walkway shall be the responsibility of the Homeowners' Association. Hours of walkway use shall be limited to 9:00 a.m. through 9:00 p.m. daily.

The Declaration contains no reference to a pier or any improvements built beyond the walkway.

After the original map and Declaration were recorded, the Developer began construction of a wooden pier and walkway on Lot 37 of the subdivision, with the apparent intention that the pier would eventually be conveyed to the HOA. The

Developer filed an application in January 2006 with the North Carolina Department of Environmental and Natural Resources, which sought a permit to construct the pier under the North Carolina Coastal Area Management Act ("CAMA"). The plans submitted in support of the permit application depicts the pier connecting with the walkway easement. The Division of Coastal Management issued the permit to the Developer on 5 April 2006. The permit refers to the pier as a "community access facility."

Construction of the pier was completed in August 2007. Since that time, the pier has been in continual use by the Kings Harbor lot owners. The pier was constructed on Kings Creek and can be accessed via the ten-foot pedestrian walkway easement over Lot 37. Shortly after construction of the pier was completed, a sign was erected at the walkway's entrance, which read, "Kings Harbor Pier."

On 28 March 2006, the Developer conveyed Lot 38 via general warranty deed to Mrs. Goldman's mother, Willa Mae Hartley. Ms. Hartley began living in the home constructed on Lot 38 in 2007. Lot 38 is located adjacent to Lot 37. When Mrs. Goldman visited her mother, she would see neighbors openly using the walkway and pier.

In March 2011, the Developer conveyed Lot 37 to Ms. Hartley via general warranty deed for the purchase price of $100,000.00. On 16 October 2014, the Developer purported to convey all of its title, rights, and interests in the community

pier and walkway easement to the HOA. Ms. Hartley never took any action to discourage or prevent the HOA lot owners from using the walkway or pier, nor acted in a way to suggest she asserted exclusive ownership to either. The pier is the sole structure on Lot 37.

Ms. Hartley died in August 2011, and the Goldmans inherited Lots 37 and 38. They began living in the house on Lot 38 in 2012. The Goldmans observed other lot owners continued to use and enjoy the walkway and pier after they moved into the house. Prior to September 2014, the Goldmans took no action to prevent members of the HOA community from using the walkway and pier.

Mr. Goldman became an officer and director of the HOA's board in January 2013. He participated in multiple board meetings where the pier was discussed. For example, at the meeting in April 2013, Mr. Goldman proposed a new sign at the pier addressing times the pier was open, swimming, and boat launchings. Minutes from the HOA board meetings in 2013 show Mr. Goldman repeatedly participated in discussions about the HOA's control and maintenance of the walkway and pier. On 22 April 2014, the minutes reflect the Board discussed purchasing insurance coverage on behalf of the HOA for the walkway and pier.

Mr. Goldman drafted a letter in July 2014, which proposed the HOA agree for him to move the ten-foot easement on Lot 37 from the side closest to his house to the

"far side" of Lot 37, to "give the community a more direct access as well as allowing maximum usage of our combined lots."

During the summer of 2014, the Goldmans began to assert exclusive ownership of the pier. On 30 August 2014, the Goldmans placed a chain across the entrance to the pier. The chain was removed by HOA representatives. The Goldmans replaced the chain within a week, which was also removed by the HOA. On 21 October 2014, the Goldmans erected a locked wooden gate across the entrance to the pier.

On 27 October 2014, the HOA filed suit against the Goldmans for a declaratory judgment to determine the parties' ownership rights of the pier. The HOA also claimed trespass against the Goldmans, and sought punitive damages and injunctive relief. The Goldmans counterclaimed and asserted exclusive ownership of the pier. The parties filed cross-motions for summary judgment.

By written order dated 18 July 2016, the trial court: (1) denied the Goldmans' motion for summary judgment; (2) dismissed the Goldmans' counterclaim; (3) granted the HOA's motion for summary judgment on its claim for declaratory relief; (4) granted the HOA's motion for summary judgment on its claim for trespass and awarded nominal damages; and (5) entered a permanent injunction, which enjoined Defendants from blocking or obstructing the walkway or community pier.

The trial court declared the ten-foot walkway easement and pier were dedicated and constructed for the use and enjoyment of the HOA lot owners, the HOA

holds *all rights and title* to the easement and pier as common property, and the Goldmans do not possess exclusive rights to the easement and community pier. The Goldmans appeal.

## II. Jurisdiction

The Goldmans appeal from the trial court's final judgment on the parties' cross-motions for summary judgment pursuant to N.C. Gen. Stat. § 7A-27(a) (2015). Although this appeal is interlocutory because the HOA's claim for punitive damages remains for trial, the trial court entered an order pursuant to Rule 54(b), which certifies no just reason exists to delay an appeal from the claims resolved in the trial court's 18 July 2016 Summary Judgment and Order for Permanent Injunction. N.C. Gen. Stat. § 1A-1, Rule 54(b) (2015). The Goldmans' appeal is properly before this Court.

## III. Issues

The Goldmans argue the trial court erred by: (1) considering certain portions of affidavits submitted by the HOA in support of the HOA's partial motion for summary judgment, and (2) granting summary judgment in favor of the HOA and denying the Goldmans' motion for summary judgment and dismissing their counterclaim, where a genuine issue of material fact exists regarding lawful ownership of the pier.

## IV. Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2015); *see Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 208, 212, 580 S.E.2d 732, 737 (2003) (citation omitted), *aff'd per curiam*, 358 N.C. 131, 591 S.E.2d 521 (2004). "An issue is 'genuine' if it can be proven by substantial evidence and a fact is 'material' if it would constitute or irrevocably establish any material element of a claim or a defense." *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982) (citations and internal quotation marks omitted).

In reviewing a motion for summary judgment, the trial court must "view the pleadings and all other evidence in the record in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor." *N.C. Farm Bureau Mut. Ins. Co. v. Sadler*, 365 N.C. 178, 182, 711 S.E.2d 114, 117 (2011) (citation omitted). This Court reviews a trial court's summary judgment order *de novo*. *Sturgill v. Ashe Mem'l Hosp., Inc.*, 186 N.C. App. 624, 626, 652 S.E.2d 302, 304 (2007), *disc. review denied*, 362 N.C. 180, 658 S.E.2d 662 (2008).

<u>V. Ownership of the Pier</u>

The Goldmans argue the trial court erred by denying their motion for summary judgment and dismissing their counterclaim and by granting summary judgment in favor of the HOA. We agree.

The HOA's claims for relief are based upon its allegation that "(t)he association owns the Community Pier as common property." The Goldmans also seek relief based upon their claim of exclusive ownership of the pier.

Lot 37 and the pier constructed upon it were originally owned by the Developer. "Riparian rights are vested property rights that arise out of ownership of land bounded or traversed by navigable water." *Pine Knoll Ass'n v. Cardon*, 126 N.C. App. 155, 159, 484 S.E.2d 446, 448, *disc. review denied*, 347 N.C. 138, 492 S.E.2d 26 (1997) (citation omitted).

> A riparian owner has "a qualified property in the water frontage belonging, by nature, to their land, the chief advantage growing out of the appurtenant estate in the submerged land being the right of access over an extension of their waterfronts to navigable water, and the right to construct wharfs, piers, or landings . . . ."

*Id.* (quoting *Bond v. Wool,* 107 N.C. 139, 148, 12 S.E. 281, 284 (1890)).

At the time of permitting and construction of the pier, the Developer owned Lot 37, including the riparian rights appurtenant to that lot. The Developer remained the owner of Lot 37 and its riparian rights until Lot 37 was conveyed to Ms. Hartley in March 2011. The legal description of the property contained in the general warranty deed to Ms. Hartley states, "all of Lot 37, as shown on that plat entitled,

'Revised Final Plat for Kings Harbor, II', dated August 6, 2010, . . . and recorded in Map Book 60, Page 182, Slide M-1736, Onslow County Registry." The plat map does not show any easement extended beyond the boundary or pier located on Lot 37.

The legal description of Lot 37 contained in the deed to Ms. Hartley further states the conveyance is "[s]ubject to restrictive covenants recorded in Book [2501], Page 745, Onslow County Registry." The Kings Harbor restrictive covenants provide that "(a)ll lot owners shall have use of the walkway on Lot 37 as shown on the recorded plat." The pier is not mentioned in the restrictive covenants.

"The law favors creation of a fee simple estate unless it is clearly shown a lesser estate was intended." *Vestal v. Vestal*, 49 N.C. App. 263, 267, 271 S.E.2d 306, 309 (1980). Neither the pier nor any other riparian rights were excepted or conditioned from the 25 March 2011 conveyance from the Developer to Ms. Hartley.

"An exception means that some part of the estate is not granted at all or is withdrawn from the effect of the grant." *Amerson v. Lancaster*, 106 N.C. App. 51, 54 415 S.E.2d 93, 95 (1992) (citation omitted). Title to all of the riparian rights, including the pier located thereon, passed to Ms. Hartley on 25 March 2011, and then to the Goldmans upon Ms. Hartley's death.

The HOA argues the map, Declaration, deeds, CAMA permit, and the Goldmans' own conduct show the walkway easement and pier was intended by the Developer to provide water access to the HOA's lot owners. It is undisputed the ten-

foot walkway easement and servitude across Lot 37 was created and reserved for the benefit of the lot owners, and granted to the HOA. This easement is clearly shown on the recorded plat map, and is referenced in the legal description of the deed to Ms. Hartley.

The HOA's reliance upon the purported intent of the parties is misplaced. "The grantor's intent must be understood as that expressed in the language of the deed[.]" *Simmons v. Waddell*, __ N.C. App. __, __ 775 S.E.2d 661, 671 (2015) (citing *Cty. of Moore v. Humane Soc'y of Moore Cty., Inc.*, 157 N.C. App. 293, 298, 578 S.E.2d 682, 685 (2003)). "However, if the language is uncertain or ambiguous, the court may consider all the surrounding circumstances, including those existing when the document was drawn, . . . and the construction which the parties have placed on the language, so that the intention of the parties may be ascertained and given effect." *Id.* (citing *Century Commc'ns, Inc. v. Hous. Auth. of City of Wilson*, 313 N.C. 143, 146, 326 S.E.2d 261, 264 (1985)). "We must, if possible without resorting to parol evidence, determine the grantors' intent based on the four corners of the deed." *Id.* at __, 578 S.E.2d at 674. (citing *Cty. of Moore*, 157 N.C. App. at 298, 578 S.E.2d at 685).

Here, the language of the deed to Lot 37 is clear and unambiguous, contains no exceptions, and is subject only to restrictive covenants that do not mention either the pier or the riparian rights. "[A] map or plat, referred to in a deed, becomes a part of the deed, as if it were written therein." *Stines v. Willying, Inc.*, 81 N.C. App. 98,

101, 344 S.E.2d 546, 548 (1986).  The recorded plat likewise does not show the pier or any structure extending from the boundary and shoreline of Lot 37.

Furthermore, "the scope of an express easement is controlled by the terms of the conveyance if the conveyance is precise as to this issue." *Swaim v. Simpson*, 120 N.C. App. 863, 864, 463 S.E.2d 785, 786 (1995), *aff'd per curiam*, 343 N.C. 298, 469 S.E.2d 553 (1996).  When the instrument creating an express easement precisely describes the extent of the easement, the plain language and terms of the easement control. *Williams v. Abernethy*, 102 N.C. App. 462, 464-65, 402 S.E.2d 438, 440 (1991).

Easements are "granted for the benefit of the particular land, and its use is limited to such land.  Its use cannot be extended to other land, nor can the way be converted into a public way without the consent of the owner of the servient estate." *Wood v. Woodley*, 160 N.C. 14, 16, 75 S.E. 719, 720 (1912) (citation and quotation marks omitted).  Here, the ten-foot access easement shown on the recorded plat ends at the boundary of Lot 37.  Without permission from the Goldmans, the easement cannot be extended by implication into the creek, to include riparian rights or structures located thereon. *See id.*

## VI. Conclusion

The Developer conveyed all property rights he owned in Lot 37, including the appurtenant riparian rights and the pier located thereon, to Ms. Hartley in 2011.  His general warranty deed is subject only to the ten-foot walkway easement from the

HOA maintained street to the boundary line as shown on the plat and referenced in the restrictive covenants. Having conveyed all of the riparian property rights of Lot 37 to Ms. Hartley in 2011, the Developer thereafter owned no portion of or any rights appurtenant to Lot 37 and owned no interest to convey the pier to the HOA in October 2014. *See Lovette v. Stone*, 239 N.C. 206, 214, 79 S.E.2d 479, 485 (1954) ("A grantor cannot convey to his grantee an estate of greater dignity than the one he has.").

The Goldmans inherited the riparian rights appurtenant to Lot 37 from Ms. Hartley, including the pier built thereon. The trial court erred by determining the HOA holds any, much less all, rights, title, or extended easement onto the pier. The trial court erred by granting partial summary judgment in favor of the HOA, and denying the Goldmans' motion for summary judgment and by dismissing their counterclaim. In light of our holding, we do not address the Goldmans' remaining argument.

Under *de novo* review, we reverse the order of the trial court granting summary judgment in favor of Plaintiff and remand for entry of an order granting Defendant's motion for summary judgment. *It is so ordered*.

REVERSED AND REMANDED.

Chief Judge MCGEE and Judge DILLON concur.