NEW COVENANT WORSHIP CENTER and LONDON EVANGELISTIC MINISTRIES, as
    successors and assigns of LAUREL HILL FULL GOSPEL CHURCH, INC., as suc-
    cessors and assigns of RACHEL'S CHAPEL FREE WILL BAPTIST CHURCH,
    through its Trustees, HENRY THOMAS LUNCEFORD, ERNEST SPARKS, and
    ERNEST ELMORE SPARKS, Plaintiffs v. CHARLES WRIGHT, RUTH WRIGHT,
    and ALICE OXENDINE, Defendants

No. COA03-914

(Filed 7 September 2004)

**1. Mortgages and Deeds of Trust— reverter clause—fee upon
   condition subsequent**

The trial court erred by granting defendants' counterclaim
determining that Laurel Hill New Covenant Worship Center is the
legitimate owner of the Rachels Chapel Property based on the
enforcement of reverter clauses contained in the 1967 and 1985
deeds, because: (1) unlike a fee simple determinable, there is no
automatic reversion in a fee upon a condition subsequent upon
the happening of the stated contingency, and the estate continues
until the grantor or his heirs exercises the right of reentry or
brings a possessory action to terminate the estate; (2) the
grantor's heirs had taken insufficient steps to defeat the estate
originally granted to the pertinent church, and the heirs could not
deed the property to defendants until they took proper steps to
terminate the estate originally granted by the grantor to the
Rachels Chapel Free Will Baptist Church; and (3) nothing sup-
ports the trial court's proposition that a conveyance of property
constitutes a re-entry for purposes of terminating a fee simple
subject to condition subsequent.

**2. Adverse Possession— physical entry—nonpermissive pos-
   session—color of title**

The trial court did not err by denying plaintiff London
Evangelistic Ministries' prayer for relief to quiet title to certain
real property in favor of defendants based on the conclusion that
plaintiff did not establish title to the pertinent property based on
title by more than twenty years of adverse possession or title by
more than seven years of adverse possession under color of title,
because: (1) plaintiff presented insufficient evidence to show it
actually occupied the pertinent property and although a portion
of the wing of a new brick building apparently extends onto the
pertinent property, such extension does not constitute actual pos-
session of the entire pertinent tract; (3) plaintiff failed to show its

alleged possession was nonpermissive; (4) neither a 1978 nor a 1985 deed of trust served as color of title, and further, the deed cannot qualify as color of title if the grantee knows a deed is fraudulent; and (5) any use of the property was permissive and not adverse.

Appeal by plaintiffs from judgment entered 30 December 2002 by Judge B. Craig Ellis in Superior Court, Scotland County. Heard in the Court of Appeals 18 May 2004.

*Van Camp, Meacham & Newman, PLLC, by Michael J. Newman, for plaintiff appellant London Evangelistic Ministries.*

*W. Philip McRae for defendant appellees.*

WYNN, Judge.

Plaintiff London Evangelistic Ministries appeals from judgment of the trial court denying its action to quiet title to certain real property in favor of Defendants Charles Wright, Ruth Wright, and Alice Oxendine. Plaintiff contends the trial court erred by (1) enforcing reverter clauses in the deeds to the property; (2) concluding Plaintiff did not obtain the property by adverse possession; and (3) failing to address issues surrounding a 1985 deed of trust executed by Plaintiff. For the reasons stated herein, we affirm in part and reverse in part the decision of the trial court.

On 3 August 2001, Plaintiff, together with New Covenant Worship Center, filed a verified action pursuant to section 41-10 of the North Carolina General Statutes to quiet title to certain real property located in Scotland County, North Carolina. Defendants counter-claimed, asserting they were the rightful owners of the property at issue. The matter came before the trial court on 4 November 2002. At the hearing, evidence was presented tending to show the following: Sallie W. Jackson owned a certain tract of land ("original tract") on which a wood frame building, commonly referred to as "Rachels Chapel" was located. On 19 September 1967, Jackson conveyed by warranty deed a portion of the original tract, including the wood frame building, to a church congregation known as "Rachels Chapel Free Will Baptist Church." The 1967 deed was recorded in the Scotland County Registry. The 1967 deed contained the following language:

But this conveyance is made subject to the express condition that the premises herein conveyed shall revert and become the property of the party of the first part or her heirs at any time that said premises shall not be used as a church site by the Rachels Chapel Free Will Baptist Church congregation.

The congregation known as Rachels Chapel Free Will Baptist Church subsequently outgrew Rachels Chapel and approached Jackson with the request she convey another parcel of land in order to erect a larger, more modern church building. On 9 June 1977, Jackson conveyed by warranty deed a second adjacent parcel of the original tract of land to "Jerry Wayne Norton, Billy G. Ledwell, Sr., [and] Henry T. Lunceford, acting in their capacity as Trustees of Rachels Chapel Free Will Baptist Church." The 1977 deed, also duly recorded at the Scotland County Registry, contained no reversion language or other restrictions.

In order to construct a new church building, the trustees of Rachels Chapel Free Will Baptist Church on 23 January 1978 obtained a loan from Richmond Federal Savings and Loan Association in the amount of $38,000.00. The loan was secured by a recorded deed of trust to the two parcels of land. The Rachels Chapel Free Will Baptist Church congregation subsequently built a new brick church building on the parcel of land described in the 1977 deed. A portion of the wing of the new building, however, extended onto the parcel of land described in the 1967 deed. On 17 March 1981, a third party conveyed to the trustees of Rachels Chapel Free Will Baptist Church by warranty deed a third parcel of land, adjacent to the two other parcels.

The parties presented conflicting evidence as to whether the Rachels Chapel Free Will Baptist Church congregation continued to use Rachels Chapel. On 14 January 1985, a group known as "Laurel Hill Full Gospel Church, Inc." was issued articles of incorporation by the North Carolina Secretary of State. The articles of incorporation designated Laurel Hill Full Gospel Church, Inc. as a non-profit corporation organized for the purpose of performing "church and religious activities of Laurel Hill Full Gospel Church, Inc." On 4 May 1985, Laurel Hill Full Gospel Church, Inc. made a payment on the 1978 loan for the new brick building. That same day, the board of directors for Laurel Hill Full Gospel Church, Inc. issued a statement announcing their intent to dissolve the corporation. The statement further noted that "[t]he assets of said corporation have been turned over to the [Plaintiff] as of April 20, 1985. At that time the Board members resigned . . . their positions and turned all responsibility of the church

over to the Board of Directors of the [Plaintiff corporation]." On 9 May 1985, Richmond Federal Savings and Loan Association issued a letter to Plaintiff along with a copy of the note and deed of trust for the original 1978 loan. The letter advised Plaintiff that if it "want[ed] a new note and deed of trust in a different name, [it] would be required to refinance and make a new loan." Plaintiff subsequently paid off the balance of the 1978 loan. The North Carolina Secretary of State issued articles of dissolution to Laurel Hill Full Gospel Church, Inc. on 16 May 1985.

Plaintiff contended at trial it obtained possession of the three tracts of land from Laurel Hill Full Gospel Church, Inc. upon the dissolution. Plaintiff presented evidence of a deed of trust dated 5 December 1985 in the amount of $28,484.00, which was the sum Plaintiff asserted its founder and president, Warren M. London, invested in the brick building. The recorded deed of trust lists the grantors as being "Cecilia Greene, Keith London, Larry M. London and Phyllis London, Trustees of Rachels Chapel Free Will Baptist Church (also called Rachels Free Will Baptist Church)" and pledges as security for the deed of trust the Rachels Chapel property, along with the adjacent tract on which the brick building was located. Cecilia Greene was the wife of Warren London, while the other listed trustees were his sons and daughter-in-law. Plaintiff presented no other evidence, such as bills of sale, warranty deeds or other documents demonstrating a transfer of any assets purportedly owned by Laurel Hill Full Gospel Church, Inc.

Plaintiff approached Jackson at some point during the mid-1980's and received her permission to remove pews from the Rachels Chapel building. On 26 September 1985, Jackson conveyed by non-warranty deed the parcel of land described in the 1967 deed to "Marvin Bullock, John White, [and] Judy Pond acting in their capacity as Trustees of Sandhills Free Will Baptist Church." The 1985 deed contained the following language:

> But this conveyance is made subject to the express condition that the premises herein conveyed shall revert and become the property of the grantor or her heirs at the end of ten years if the property shall not then be used for church purposes for a Free Will Baptist church and shall revert and become the property of the grantor or her heirs at any time after ten years that the premises shall cease being used for church purposes by a Free Will Baptist Church.

It is agreed that the premises and the building shall be known as Rachels Chapel Church without regard to the name of the Free Will Baptist church which shall be using the premises for church purposes.

The 1985 deed was duly recorded in Scotland County.

After assuming physical possession of the brick church building, Plaintiff advertised and rented the premises to various church congregations of various denominations other than Free Will Baptist. One such group was New Covenant Worship Center, a Christian faith congregation originally founded by Defendants Ruth Wright and Alice Oxendine. New Covenant Worship Center hired as its pastor Howard Mayers, and authorized him to approach Plaintiff to rent the new church building for its place of worship. Plaintiff rented only the main portion of the brick building to New Covenant Worship Center, and not the wing of the building.

In early 2001, the congregation of New Covenant Worship Center discovered Mayers had attempted to use church funds for personal purposes. During a confrontation with Defendants Wright and Oxendine, Mayers asserted the lease he had signed with Plaintiff was in his personal name, and ordered Wright and Oxendine to leave the premises. New Covenant Worship Center discharged Mayers during May of 2001, and his ministerial license was subsequently revoked. A group of individuals consisting primarily of Mayers and his immediate family portrayed themselves as being New Covenant Worship Center for a short period of time after May of 2001 through the commencement of the instant action, but the group thereafter disbanded and abandoned the new church building, which was later rented to another congregation. The remaining church congregation of the original New Covenant Worship Center, including individual Defendants, began calling themselves "Laurel Hill New Covenant Worship Center" to distinguish themselves from Mayers and his followers.

In the summer of 2001, Defendants began searching for a new place of worship. The Rachels Chapel building had meanwhile fallen into disrepair, was filled with refuse, and had become a dumping ground for abandoned automobiles. Defendants contacted Nancy J. Shelley, the daughter of the late Sallie Jackson, and inquired about using Rachels Chapel for their church. On 20 June 2001, Jackson's three daughters, who were also her heirs, and their respective spouses, conveyed the parcel of land described in the 1967 deed to "Alice Oxendine, Lacy Sanderson, and Alice Wright, as the Trustees of

Laurel Hill New Covenant Worship Center." Defendants thereafter contacted Plaintiff and demanded possession of the Rachels Chapel property. Plaintiff subsequently filed the instant action.

Upon conclusion of the evidence, the trial court made detailed findings of fact and concluded that Laurel Hill New Covenant Worship Center was the rightful owner of the Rachels Chapel property, and denied Plaintiff's prayer for relief to quiet title as to that parcel of land. The trial court noted that Defendants had not challenged Plaintiff's possession of the adjacent parcels of land described in the 1977 and 1981 deeds, despite an apparent defective chain of title. The trial court entered judgment accordingly, and Plaintiff appealed.

---

Plaintiff argues on appeal (1) the reverter clauses contained in the 1967 and 1985 deeds are not enforceable; (2) Plaintiff obtained the Rachels Chapel property through adverse possession; and (3) the 1985 deed of trust gave it possession of the Rachels Chapel property. For the reasons stated herein, we affirm in part and reverse in part the judgment of the trial court.

As an initial matter, we observe that the findings of fact made by a trial court in a bench trial are conclusive on appeal if there is competent evidence to support them, even where there may be evidence to support findings to the contrary. *County of Moore v. Humane Soc'y of Moore Cty.*, 157 N.C. App. 293, 296, 578 S.E.2d 682, 684 (2003). Conclusions of law, by contrast, are entirely reviewable on appeal. *Id.*

[1] Plaintiff argues the trial court erred in enforcing the reverter clauses contained in the 1967 and 1985 deeds because the heirs of Jackson had taken insufficient steps to defeat the estate originally granted by Jackson to Rachels Chapel Free Will Baptist Church. We agree with Plaintiff.

The trial court correctly concluded that the reversion language of the 1985 deed created a fee simple on condition subsequent and that re-entry could be exercised by Sallie Jackson or her heirs. The language of the 1967 deed similarly created a fee upon condition subsequent. A fee upon a condition subsequent is created where the grantor expressly reserves the right to re-enter the property, provides for a forfeiture, for a reversion, or that the instrument shall be null and void. *Mattox v. State*, 280 N.C. 471, 476, 186 S.E.2d 378, 382 (1972); *Brittain v. Taylor*, 168 N.C. 271, 273, 84 S.E. 280, 281 (1915). Here, the 1985 deed provided that "this conveyance is made subject

to the express condition that the premises herein conveyed shall revert and become the property of the grantor or her heirs at the end of ten years if the property shall not then be used for church purposes for a Free Will Baptist church." The earlier 1967 deed made the conveyance "subject to the express condition that the premises herein conveyed shall revert and become the property of the party of the first part or her heirs at any time that said premises shall not be used as a church site by the Rachels Chapel Free Will Baptist Church congregation." Thus, the estates were subject to forfeiture, which could be exercised by Jackson, the grantor, or her heirs, upon the happening of the stated contingency. However, unlike a fee simple determinable, "[i]n a fee upon a condition subsequent, there is no *automatic* reversion upon the happening of the stated contingency . . . ." *Mattox*, 280 N.C. at 476, 186 S.E.2d at 382 (emphasis added); *see also Brittain*, 168 N.C. at 276, 84 S.E. at 282 (providing that, where the conditions subsequent are broken, such does not *ipso facto* produce a reversion of the title, and the estate continues in full force until the proper steps are taken to consummate the forfeiture); *accord*, James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 4-13(b), at 73 (Patrick K. Hetrick & James B. McLaughlin, Jr. eds., 5th ed. 1999). Rather, the estate continues until the grantor, or her heirs, exercises the right of re-entry or brings a possessory action to terminate the estate. *Higdon v. Davis*, 315 N.C. 208, 216, 337 S.E.2d 543, 547 (1985) (if a conveyance is of a fee subject to a condition subsequent, the grantor or his heirs must re-enter after breach of the condition in order to terminate the grantee's fee); *Mattox*, 280 N.C. at 476-77, 186 S.E.2d at 382; *Brittain*, 168 N.C. at 276-77, 84 S.E. at 282-83.

In the instant case, neither party presented any evidence that Jackson or her heirs have at any time either (1) re-entered the Rachels Chapel property or (2) brought an action to terminate the continuing estate. Defendants could not perform this task on the heirs' behalf. *See Higdon*, 315 N.C. at 216, 337 S.E.2d at 548 (noting that, "when there is a right of re-entry for condition broken in regard to a fee granted subject to a condition subsequent, that right is exercisable only by the grantor or his heirs"); *Brittain*, 168 N.C. at 276, 84 S.E. at 282-83. The trial court concluded that "the deed from [Jackson's heirs] constituted an exercise of the option of re-entry and vested title in the subject premises in 'Laurel Hill New Covenant Worship Center.'" We have been unable to discover any authority, however, to support the trial court's proposition that a conveyance of property constitutes a "re-entry" for purposes of terminating a fee

simple subject to condition subsequent. Thus, the estate created by the 1967 deed was not terminated by the later 1985 deed by Jackson to Sandhills Free Will Baptist Church or the 2001 deed by Jackson's heirs to Laurel Hill New Covenant Worship Center. The trial court therefore erred in concluding that title to the Rachels Chapel property was vested in Laurel Hill New Covenant Worship Center.

[2] The trial court's erroneous conclusion in this regard, however, does not necessarily mean the trial court erred in denying Plaintiff's motion to quiet title. An action to quiet title to realty pursuant to section 41-10 of the North Carolina General Statutes requires two essential elements: (1) the plaintiff must own the land in controversy, or have some estate or interest in it; and (2) the defendant must assert some claim to such land adverse to the plaintiff's title, estate or interest. N.C. Gen. Stat. § 41-10 (2003); *Wells v. Clayton*, 236 N.C. 102, 107, 72 S.E.2d 16, 20 (1952); *see also Heath v. Turner*, 309 N.C. 483, 488, 308 S.E.2d 244, 247 (1983) (stating that, in an action to quiet title under section 41-10, the plaintiffs bear the burden of proving valid title in themselves). Although the evidence demonstrated that Defendants do not have valid title to the Rachels Chapel property at present, Plaintiff failed to establish its own interest in the property. Plaintiff presented no deed, bill of sale, or other legal document demonstrating rightful title to or interest in the Rachels Chapel property. The statement issued by the board of directors for Laurel Hill Full Gospel Church, Inc., recited merely that the assets of the corporation had been turned over to Plaintiff. The statement did not detail any particular asset owned by Laurel Hill Full Gospel Church, Inc., however. Plaintiff argues it established title to the property based on (1) title by more than twenty years of adverse possession, and (2) title by more than seven years of adverse possession under color of title. We are not persuaded.

Plaintiff failed to establish adverse possession of the Rachels Chapel property on several grounds. First, Plaintiff presented insufficient evidence to show it actually occupied the Rachels Chapel property. "A mere intention on the part of a claimant 'to claim land adversely,' unaccompanied by a physical entry or a taking of possession of the land, will never ripen into title." Webster § 14-4, at 641. As noted by our Supreme Court, adverse possession

consists in actual possession, with an intent to hold solely for the possessor to the exclusion of others, and is denoted by the exercise of acts of dominion over the land, in making the ordinary use and taking the ordinary profits of which it is susceptible in its

present state, such acts to be so repeated as to show that they are done in the character of owner, in opposition to right or claim of any other person, and not merely as an occasional trespasser. It must be decided and notorious as the nature of the land will permit, affording unequivocal indication to all persons that he is exercising thereon the dominion of owner.

*Locklear v. Savage*, 159 N.C. 236, 237-38, 74 S.E. 347, 348 (1912); *see also Walker v. Story*, 253 N.C. 59, 60, 116 S.E.2d 147, 148 (1960) (concluding that, in an action for ejectment, the trial court properly found in favor of the defendant because the plaintiff offered no evidence of possession of disputed land by him or his grantors and thus did not sustain his burden of establishing his superior title to land); *Merrick v. Peterson*, 143 N.C. App. 656, 664, 548 S.E.2d 171, 176 (holding that where the plaintiff never actually possessed the property, her claim of adverse possession could not prevail), *disc. review denied*, 354 N.C. 364, 556 S.E.2d 572 (2001).

Here, the evidence showed and the trial court found that, after the new brick building was built upon the second parcel of land from the original tract, no one used the Rachels Chapel property, and it eventually fell "into disrepair and . . . bec[ame] a dumping ground for old cars and was filled with junk and refuse for many years." Although a portion of the wing of the new brick building apparently extends onto the Rachels Chapel property, such extension does not constitute actual possession of the entire Rachels Chapel tract. *See Carswell v. Morganton*, 236 N.C. 375, 377, 72 S.E.2d 748, 749 (1952) (providing that an adverse possessor of land without color of title cannot acquire title to any greater amount of land than that which he has *actually occupied* for the statutory period).

Second, Plaintiff failed to show its alleged possession of the Rachels Chapel property was non-permissive. *See Lancaster v. Maple St. Homeowners Ass'n*, 156 N.C. App. 429, 436, 577 S.E.2d 365, 371 ("Our Courts have long recognized that the party asserting the adverse possession claim must prove that their taking and possessing the land of another was hostile."), *affirmed per curiam*, 357 N.C. 571, 597 S.E.2d 672 (2003). The trial court found that, even after it assumed physical possession of the brick building in the mid-1980's, Plaintiff "acknowledged the continuing rights of Sallie W. Jackson with regard to Rachels Chapel by asking for and receiving consent from her to remove pews from the Rachels Chapel building." Plaintiff therefore failed to show its possession of the Rachels Chapel property, if any, was hostile for the twenty-year time period.

Plaintiff also failed to prove title to the property under color of title. Adverse possession under color of title consists of an occupancy under a writing purporting to pass title to the occupant but which does not actually do so either because the person executing the writing fails to have title or capacity to transfer the title or because of the defective mode of the conveyance used. *McManus v. Kluttz*, —— N.C. App. ——, 599 S.E.2d 438 (2004). In order to constitute an effective transfer for purposes of color of title, a transaction must (1) be in writing; (2) purport to pass title; and (3) contain an adequate description of the property transferred. *Foreman v. Sholl*, 113 N.C. App. 282, 287, 439 S.E.2d 169, 173-74 (1994); Monica Kivel Kalo, *The Doctrine of Color of Title in North Carolina*, 13 N.C. Cent. L.J. 123, 141 (1982).

Plaintiff relies upon two transactions to establish color of title. First, Plaintiff argues the 1978 deed of trust establishes color of title. We do not agree. Under a deed of trust, legal title is conveyed to the trustee to hold for the benefit of the lender until the loan is repaid. Webster § 13-1, at 538. Plaintiff was not the trustee on the 1978 deed of trust; indeed, its name does not appear anywhere on the document. As the document does not purport to pass title to Plaintiff, it cannot serve as color of title. Second, Plaintiff contends the 1985 deed of trust serves as valid color of title. Again, we must disagree. The 1985 deed of trust conveyed legal title to Edward Johnston, Jr. as trustee. According to Plaintiff, the loan for which the 1985 deed of trust was secured has never been satisfied. Thus, the 1985 deed of trust, like the 1978 deed of trust, does not purport to convey title to Plaintiff and cannot serve as color of title. It is moreover notable that the 1985 deed of trust lists "Cecilia Greene, Keith London, Larry M. London and Phyllis London, Trustees of Rachels Chapel Free Will Baptist Church (also called Rachels Free Will Baptist Church)" as the grantors. Plaintiff presented no evidence of any connection between these alleged trustees and the original Rachels Chapel Free Will Baptist Church congregation. Cecilia Greene was the wife of the grantee, Warren London, founder and president of Plaintiff corporation, while the other listed trustees were his sons and daughter-in-law. It is well settled that, if the grantee knows a deed is fraudulent, the deed cannot qualify as color of title. *Foreman*, 113 N.C. App. at 290, 439 S.E.2d at 175; Webster § 14-11, at 656.

Finally, the trial court found that any use of the Rachels Chapel property was permissive and not adverse. Any possession under color of title "must be actual, open, hostile, exclusive, and continuous for the required [seven-year] time period." *McManus*, —— N.C. App. at

——, 599 S.E.2d at ——. We conclude Plaintiff did not acquire title to the Rachels Chapel property by virtue of constructive adverse possession under color of title. We have reviewed Plaintiff's remaining arguments and find them to be without merit.

In summary, we conclude the trial court erred in granting Defendants' counterclaim by determining that the Laurel Hill New Covenant Worship Center is the legitimate owner of the Rachels Chapel property. Jackson's heirs could not deed the property to Defendants until they take proper steps to terminate the estate originally granted by Jackson to the Rachels Chapel Free Will Baptist Church. The decision of the trial court is reversed in this regard. As Plaintiff failed to establish its title to the property, however, the trial court properly denied Plaintiff's prayer for relief to quiet title. The decision of the trial court is hereby,

Affirmed in part and reversed in part.

Judges CALABRIA and STEELMAN concur.