STROUD, Judge.
 

 *375
 
 Plaintiff appeals order granting summary judgment in favor of defendants. For the following reasons, we reverse and remand.
 

 I. Background
 

 This case would make a good bar exam question, or perhaps several questions, since so many legal issues are raised. The briefs in this case have been of limited assistance to this Court, since both parties argue important facts diametrically opposed to those they previously asserted in their pleadings or depositions or both.
 

 On 10 May 2004, the deed which is the subject of this dispute was recorded in the Lenoir County Register of Deeds in Book 1378, Page 691 of the Lenoir County Register of Deeds ("recorded deed").
 
 [1]
 
 The date on the deed when it was executed is 12 March 1999, but it was not notarized until 10
 
 *123
 
 May 2004, the same day as recordation, by defendant Patricia Quinn. The recorded deed has no revenue stamp but recites that it was given for consideration. Plaintiff alleges in his complaint it was a gift deed.
 
 *376
 
 It is undisputed in deposition testimony that the recorded deed arose from an agreed-upon exchange of two parcels of property between plaintiff and his brother, Thomas Quinn and wife, Inez Quinn. The deed from Thomas and Inez Quinn to plaintiff, which is not a subject of this case, was also executed on 12 March 1999 and not recorded until 10 May 2004 in Book 1378, Page 689 of the Lenoir County Register of Deeds.
 

 In March of 2013, plaintiff filed a verified complaint against defendants. In the complaint, plaintiff alleges that he "made and executed" a gift deed from himself to defendants in 1999. Defendant Patricia Quinn notarized the deed in 2004, and it was then recorded. Plaintiff alleges that defendant Patricia Quinn "was disqualified to notarize" the deed "because she stood to receive directly from" it, and thus the deed should be treated as unrecorded. Plaintiff also alleged that because the deed was a gift that went unrecorded for more than two years, it is now void. Plaintiff made claims for a declaratory judgment, quiet title, and ejectment.
 

 In May of 2013, defendants filed a motion to dismiss and answered plaintiff's complaint denying that plaintiff had "made and executed" a deed to
 
 them
 
 and asserting that the deed was not a gift and that defendant Patricia Quinn had indeed notarized the deed in 2004. Defendants denied the substantive allegations of plaintiff's claims. Defendants claimed that
 

 [b]efore the deed was recorded, the first page of the deed was replaced with one showing ... Danny and Patricia as Grantees. This was done at the direction of Thomas and Inez as they intended throughout for this land to be Danny and Patricia's since it adjoined land already owned and occupied by Danny and Patricia.
 

 Defendants alleged numerous affirmative defenses and counterclaimed in the alternative that
 
 if the recorded deed was void
 
 they should receive an award of damages for unjust enrichment and betterments for improvements they made to the property and
 
 if the recorded deed was valid
 
 they should have removal of any cloud on their title. In July of 2013, plaintiff answered defendant's counterclaims and raised numerous affirmative defenses.
 

 On 29 August 2013, plaintiff was deposed. Plaintiff explained that he and his brother, Thomas Quinn, agreed to exchange two parcels of land. According to plaintiff, he did not sign a deed with Danny and Patricia Quinn as the grantees, but he executed a deed to Thomas Quinn as grantee. This testimony contradicts the allegations of his complaint but is consistent with the defendants' answer and forecast of evidence.
 

 *377
 
 The following day, defendant Patricia Quinn was also deposed. Defendant Patricia Quinn stated that she notarized a deed signed by plaintiff as grantor and Thomas Quinn as grantee. Defendant Patricia Quinn vehemently denied numerous times throughout her deposition that she had ever notarized a deed from plaintiff to herself. According to defendant Patricia Quinn, page two of the recorded deed, the page signed by plaintiff and notarized by her, was not attached to page one as it is now recorded with defendants' names on it; defendant Patricia Quinn stated that when plaintiff signed the deed and she notarized it, page one reflected the grantee as Thomas Quinn. Defendant Patricia Quinn further opined that she did not believe plaintiff was aware the pages were switched.
 
 [2]
 

 *124
 
 Thus, in summary, plaintiff filed a complaint alleging solely "technical" issues regarding the recorded deed from himself to defendants; plaintiff does not allege that the recorded deed is fraudulent or in any way not the deed he originally executed in 1999. Defendants
 
 denied
 
 that plaintiff had executed a deed to them as grantees. Plaintiff then clarified that the deed he executed was actually to his brother, Thomas Quinn. Defendant Patricia Quinn agreed with plaintiff and testified under oath that plaintiff signed a deed to Thomas Quinn and that is the deed she notarized. Thus, without speculation as to the family discord which most likely lies behind this scenario, because a determination of credibility can be made only by the jury or the trial judge sitting as such, there seem to be two possibilities from the facts as provided thus far: (1) If plaintiff's complaint is taken as true, plaintiff gave his land to defendants, and defendant Patricia Quinn notarized the deed to herself as a grantee or (2) if all of the other evidence is taken as true, plaintiff gave the land to his brother Thomas Quinn, and in 2004 defendant Patricia Quinn notarized that deed. Patricia Quinn believed that Thomas and Inez took the deed to their attorney after it was signed by plaintiff in an attempt "to save money and time or whatever to just not have it recorded in their names" because they would have to switch it later to put the land into defendants' names, but again, this scenario is based
 
 *378
 
 upon defendant Patricia Quinn's speculations, and not even she asserts this is what actually occurred. However, even taking defendant Patricia Quinn's assumptions as true, this would mean that plaintiff never properly signed the deed as it was recorded. We are not aware of any evidence brought forth by defendants that indicates plaintiff executed a deed to them; rather their pleadings and defendant Patricia Quinn's deposition indicate the opposite.
 

 On 7 October 2013, plaintiff filed a motion for summary judgment. On 20 February 2014, the trial court entered an order granting defendants' motion to dismiss plaintiff's claim for a declaratory judgment and denying defendants' motion to dismiss plaintiff's claims for quiet title and ejectment.
 
 [3]
 
 On 27 February 2014, the trial court granted summary judgment on plaintiff's claim for quiet title and ejectment
 
 in favor of defendants;
 
 the trial court also granted summary judgment in favor of defendants on their claim of quiet title and "ordered that any 'cloud on title' of the Defendants by any claim of the Plaintiff ... is hereby removed." Thus, because the recorded deed was not determined to be void, all claims were resolved. Plaintiff appeals only the summary judgment order in which the trial court dismissed plaintiff's claims for quiet title and ejectment and granted summary judgment for defendants on their counterclaim to quiet title and remove any cloud on title.
 

 II. Standard of Review
 

 A trial court appropriately grants a motion for summary judgment when the information contained in any depositions, answers to interrogatories, admissions, and affidavits presented for the trial court's consideration, viewed in the light most favorable to the non-movant, demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. As a result, in order to properly resolve the issues that have been presented for our review in this case, we are required to determine, on the basis of the materials presented to the trial court, whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law.
 

 *379
 
 Both before the trial court and on appeal, the evidence must be viewed in the light most favorable to the nonmoving party and all inferences from that evidence must be drawn against the moving party and in favor of the non-moving party. When there are factual issues to be determined that relate to the
 
 *125
 
 defendant's duty, or when there are issues relating to whether a party exercised reasonable care, summary judgment is inappropriate. We review orders granting or denying summary judgment using a
 
 de novo
 
 standard of review, under which this Court considers the matter anew and freely substitutes its own judgment for that of the trial court.
 

 Trillium Ridge Condominium v. Trillium Dev.,
 
 --- N.C.App. ----, ----,
 
 764 S.E.2d 203
 
 , 210-11 (citations, quotation marks, and brackets omitted),
 
 disc. review denied,
 
 - -- N.C. ----,
 
 766 S.E.2d 619
 
 ,
 
 disc. review denied,
 
 - -- N.C. ----,
 
 766 S.E.2d 646
 
 ,
 
 disc. review denied,
 
 - -- N.C. ----,
 
 766 S.E.2d 836
 
 (2014) ;
 
 see
 
 N.C. Gen.Stat. § 1A-1, Rule 56 (2013).
 

 III. Summary Judgment
 

 It is elementary that summary judgment is proper only where there is no genuine issue of a material fact when the evidence is viewed in the light most favorable to the non-movant, and a party is clearly entitled to prevail based on the law.
 
 See
 
 id.
 

 Here, there are factual disputes, and we must consider whether the factual issues are material to the various legal theories raised by both plaintiff's claims and defendant's counterclaims. Here, plaintiff was the party who moved for summary judgment, and plaintiff argues on appeal that the trial court should have granted summary judgment for him, although the trial court granted summary judgment for defendants. Defendants naturally argue that summary judgment in their favor was proper. Since both plaintiff and defendants argue that summary judgment was proper, if granted in their own favor, both argue that the material facts are undisputed, but then they draw differing inferences of the facts. Thus we must consider how the law fits in with this conflict.
 

 Turning to the law, summary judgment here was granted in favor of defendant's on the legal claim of quiet title while plaintiff's claim for quiet title was dismissed.
 
 [4]
 

 *380
 
 An action to quiet title to realty pursuant to section 41-10 of the North Carolina General Statutes requires two essential elements: (1) the plaintiff must own the land in controversy, or have some estate or interest in it; and (2) the defendant must assert some claim to such land adverse to the plaintiff's title, estate or interest.
 

 New Covenant Worship Ctr. v. Wright,
 

 166 N.C.App. 96
 
 , 103,
 
 601 S.E.2d 245
 
 , 250-51 (2004) ;
 
 see
 
 N.C. Gen.Stat. § 41-10 (2013). The trial court also granted defendant's request to remove cloud on title, and the elements of this claim are the same as those for quieting title.
 
 See
 

 Chicago Title Ins. Co. v. Wetherington,
 

 127 N.C.App. 457
 
 , 461,
 
 490 S.E.2d 593
 
 , 596-97 (1997) ("An action to remove a cloud on title: May be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claims, and a decree for the plaintiff shall debar all claims of the defendant in the property of the plaintiff then owned or afterwards acquired. N.C. Gen.Stat. § 41-10 (1996). In order to establish a
 
 prima facie
 
 case for removing a cloud on title, a plaintiff must meet two requirements: (1) plaintiff must own the land in controversy, or have some estate or interest in it; and (2) defendant must assert some claim in the land which is adverse to plaintiff's title, estate or interest." (ellipses and brackets omitted)),
 
 disc. review denied,
 

 347 N.C. 574
 
 ,
 
 498 S.E.2d 380
 
 (1998).
 

 *126
 
 A. Notarization
 

 Plaintiff argues this Court should have granted summary judgment in his favor due to the fact that defendant Patricia Quinn improperly notarized the deed as recorded, or if in fact she properly notarized the deed to Thomas Quinn, the pages of the recorded deed were switched, and thus plaintiff as grantor did not even sign the recorded deed; either way, the deed would be void.
 
 See
 
 N.C. Gen.Stat. § 22-2 (2013). If plaintiff did sign the deed to defendants as recorded, the deed was not properly acknowledged by defendant Patricia Quinn because she was a grantee.
 
 See
 
 N.C. Gen.Stat. § 10B-20(c)(5-6) (2013) ("A notary shall not perform a notarial act if.... [t]he notary is a signer of, party to, or beneficiary of
 
 *381
 
 the record, that is to be notarized" or "[t]he notary will receive directly from a transaction connected with the notarial act any commission, fee, advantage, right, title, interest, cash, property, or other consideration[.]") Thus, if defendant Patricia Quinn did acknowledge the recorded deed to herself, the whole deed fails.
 
 See also
 

 Lance v. Tainter,
 

 137 N.C. 249
 
 , 250,
 
 49 S.E. 211
 
 , 212 (1904) ("The acknowledgment being a nullity, so was the probate by the clerk based thereon, and the registration..... It follows, therefore, that this instrument, not having been legally acknowledged, probated, nor registered, is invalid ... and should be canceled as a cloud upon the title which might injuriously affect the administration of the estate in the plaintiff's hands.")
 

 Defendants contend that North Carolina General Statute § 47-62 "cures the [notary] problem." In other words, defendants argue that even if defendant Patricia Quinn notarized the deed to herself and her husband-something she claims did not happen- North Carolina General Statute § 47-62 validates the deed. North Carolina General Statute § 47-62 provides that
 

 [t]he proof and acknowledgment of instruments required by law to be registered in the office of the register of deeds of a county, and all privy examinations of a feme covert to such instruments made before any notary public on or since March 11, 1907, are hereby declared valid and sufficient, notwithstanding the notary may have been interested as attorney, counsel
 
 or otherwise
 
 in such instruments.
 

 N.C. Gen.Stat. § 47-62 (2013) (emphasis added). Defendants contend that the "or otherwise" includes defendant Patricia Quinn in her capacity as both notary and grantee. We disagree.
 

 We first note that
 

 [a] court must be guided by the fundamental rule of statutory construction that statutes
 
 in pari materia,
 
 and all parts thereof, should be construed together and compared with each other. Thus, courts must harmonize such statutes, if possible, and give effect to each, that is, all applicable laws on the same subject matter should be construed together so as to produce a harmonious body of legislation, if possible.
 

 Transportation Servs. of N.C., Inc. v. Wake Cnty. Bd. of Educ.,
 

 198 N.C.App. 590
 
 , 595,
 
 680 S.E.2d 223
 
 , 226 (2009) (citations and quotation marks
 
 *382
 
 omitted). Secondly, we consider the listing of those interested as " attorney, counsel or otherwise" under
 
 ejusdem generis,
 
 which is the rule
 

 that where general words follow a designation of particular subjects or things, the meaning of the general words will ordinarily be presumed to be, and construed as, restricted by the particular designations and as including only things of the same kind, character and nature as those specifically enumerated.
 

 State v. Lee,
 

 277 N.C. 242
 
 , 244,
 
 176 S.E.2d 772
 
 , 774 (1970) (citations and quotation marks omitted).
 

 To read North Carolina General Statute § 47-62, as defendants argue, would render North Carolina General Statute § 10B-20(c)(5-6) meaningless as
 
 any
 
 interested person acting in
 
 any
 
 capacity could act as the notary and thereafter have it cured by North Carolina General Statute § 47-62.
 
 See
 
 N.C. Gen.Stat. §§ 10B-20(c)(5-6), 47-62. Our legislature amended North Carolina General Statute § 10B-20(c) as recently as 2013 and intentionally clarified which interested persons would be allowed to notarize documents; as North Carolina General Statute § 10B-20(c)(5) now provides:
 

 *127
 
 a disqualification under this subdivision shall not apply to a notary who is named in a record solely as (i) the trustee in a deed of trust, (ii) the drafter of the record, (iii) the person to whom a registered document should be mailed or sent after recording, or (iv) the attorney for a party to the record, so long as the notary is not also a party to the record individually or in some other representative or fiduciary capacity.
 

 N.C. Gen.Stat. § 10B-20(c)(5) ;
 
 see
 
 N.C. Gen.Stat. § 10B-20 Effects of Amendments. Reading North Carolina General Statute § 10B-20(c)(5) in conjunction with North Carolina General Statute § 47-62 indicates that "attorney, counsel or otherwise" was meant to include persons that may have drafted or otherwise participated in the preparation of the document. N.C. Gen.Stat. § 47-62 ; see N.C. Gen.Stat. § 10B-20(c)(5) ;
 
 see also
 

 Transportation Servs. of N.C., Inc.,
 

 198 N.C.App. at 595
 
 ,
 
 680 S.E.2d at 226
 
 . Furthermore, using the rule of
 
 ejusdem generis
 
 leads to the same conclusion as the "general word[ ]" "otherwise" is "presumed to be, and construed as, restricted by the particular designations and as including only things of the same kind, character and nature as those specifically enumerated." N.C. Gen.Stat. § 47-62 ;
 
 Lee,
 

 277 N.C. at 244
 
 ,
 
 176 S.E.2d at 774
 
 . Thus, North Carolina General Statute § 47-62 cannot cure any
 
 *383
 
 defect in notarization as to defendant Patricia Quinn if she was in fact a grantee under the deed she notarized.
 

 B. Validity between the Parties
 

 Defendants next contend that even if "the recording of the deed is not valid" the deed is still "[v]alid [b]etween the [p]arties" and cites to
 
 Patterson v. Bryant,
 

 216 N.C. 550
 
 ,
 
 5 S.E.2d 849
 
 (1939), which stated that an unrecorded deed is valid as between the parties to the deed.
 
 See
 

 Patterson
 
 at 553,
 
 5 S.E.2d at 851
 
 . Of course, one problem here is determining who the "parties" to the deed actually were. We know that plaintiff was a party, but defendants may not have been. If plaintiff did sign the deed to defendants as recorded, the deed was void because defendant Patricia Quinn could not take under the deed as notary. If plaintiff did not sign the deed as it was recorded but instead signed a deed to Thomas Quinn, the deed is void here too as plaintiff did not sign this deed.
 
 See generally
 
 N.C. Gen.Stat. § 22-2 (2013).
 
 Patterson
 
 is inapplicable as it does not address when the deed itself is void, but rather when multiple valid deeds are filed regarding the same property;
 
 Patterson
 
 does not address a deed that was not properly executed or acknowledged as the recorded deed is here.
 
 See
 

 id.,
 

 216 N.C. 550
 
 ,
 
 5 S.E.2d 849
 
 . In other words, in
 
 Patterson
 
 the issue was a
 
 faulty recording
 
 of a deed, here the issue is a
 
 faulty deed
 
 itself.
 
 See
 
 id.
 

 The recordation or non-recordation of this deed does not change the defect in its creation and cannot make it valid "between the parties," whomever they may be.
 

 C. Adverse Possession
 

 Until now, no matter which factual scenario we proceeded under, the legal conclusion has been the same-defendants cannot prevail. However, defendants now raise an argument where this is no longer the case as they contend they have "[g]ood [t]itle through [a]dverse [p]ossession" under color of title as they have possessed the land at issue since 2004 when the deed was recorded.
 
 [5]
 

 N.C. General Statute § 1-38 governs adverse possession under color of title.
 
 See
 
 N.C. Gen.Stat. § 1-38 (2013).
 

 When a person or those under whom he claims is and has been in possession of any real property, under known and visible lines and boundaries and
 
 *384
 
 under color of title, for seven years, no entry shall be made or action sustained against such possessor by a person having any right or title to the same.
 

 N.C. Gen.Stat. § 1-38(a) (2011). Furthermore, this Court has defined color of title as a writing that purports to pass title to the occupant but which does not actually do so either because the person executing
 
 *128
 
 the writing fails to have title or capacity to transfer the title or because of the defective mode of the conveyance used. However, in order to constitute color of title, defendants must have accepted the deed and entered the ... Property in good faith.
 
 Farabow v. Perry,
 

 223 N.C. 21
 
 , 25,
 
 25 S.E.2d 173
 
 , 176 (1943).
 

 Adams Creek Associates v. Davis,
 

 227 N.C.App. 457
 
 , 465-66,
 
 746 S.E.2d 1
 
 , 7 (2013) (citation, quotation marks, and ellipses omitted).
 

 Adverse possession under color of title is a complicated issue, in part, because it requires substantive consideration of subjective intent on the part of the grantee; in this case it is a particularly bewildering consideration since even the facts as solely presented by defendant Patricia Quinn leave us baffled as to what exactly happened here.
 
 See
 
 id.
 

 ("[I]n order to constitute color of title, defendants must have accepted the deed and entered the ... Property in good faith.");
 
 see also
 

 Walls v. Grohman,
 

 315 N.C. 239
 
 , 246,
 
 337 S.E.2d 556
 
 , 560 (1985) (noting that "doubt" indicates a lack of hostility which is required for adverse possession);
 
 New Covenant Worship Center,
 

 166 N.C.App. at 105
 
 ,
 
 601 S.E.2d at 252
 
 ("It is well settled that, if the grantee knows a deed is fraudulent, the deed cannot qualify as color of title.") However, we need not address every possible alternative and its result since defendants' subjective intent is certainly a "genuine issue of material fact[,]" and the issue of adverse possession cannot be answered without consideration of their intent.
 
 Trillium Ridge Condominium,
 
 ---N.C.App. at ----,
 
 764 S.E.2d 203
 
 , 210-11.
 

 D. Change in Grantees
 

 Lastly, defendants contend that even if the grantee on the deed was changed after plaintiff executed it, the change will not "put title back" to plaintiff. Defendants note quite correctly that plaintiff alleged in his complaint that he signed the deed to defendants. Of course, we also have defendant's sworn testimony that the deed plaintiff signed was to Thomas Quinn, not defendants. Yet this issue of fact is not material because the deed fails either way.
 

 *385
 
 Defendants' argument is as follows:
 

 [Plaintiff] signed a deed for the property to someone. If the front page was changed to a new grantee, that would not put title back into [plaintiff].
 
 See
 

 Dugger v. McKesson,
 

 100 N.C. 1
 
 , 11,
 
 6 S.E. 746
 
 , 750 (1888).
 

 In the case of
 
 Bowden v. Bowden
 
 [,]
 
 264 N.C. 296
 
 , 300,
 
 141 S.E.2d 296
 
 [621], 300 [625] (1965) the court found that the alteration of a deed by adding another grantee does not ordinarily divest the title and estate conveyed to the original grantee in the deed in its original form. In
 
 Bowden, supra,
 
 the court found that the burden of proof as to such alteration is on the party attacking the altered deed.
 

 Bowden
 
 states that "[w]here it has been established that alterations were made after execution and delivery of a deed, the burden is upon those claiming under the altered deed to prove that the alterations were made with the knowledge and consent of the grantor."
 
 Bowden,
 

 264 N.C. at 301
 
 ,
 
 141 S.E.2d at 626
 
 . Defendants are the parties "claiming under the altered deed" so the burden is on them to show "that the alterations were made with the knowledge and consent of the grantor."
 

 Id.
 

 Defendants have not forecast any evidence plaintiff knew that the first page of the deed was switched after he executed it or that he consented to this change. In fact, defendant Patricia Quinn stated that she did not believe that plaintiff was aware of the change. The evidence only supports two scenarios here: either the first page of the deed was switched after it was executed by the grantor and notarized, and plaintiff was not aware of the change
 
 or
 
 the deed was actually recorded as it was executed, but that means the deed was notarized by defendant Patricia Quinn and fails for that reason.
 

 IV. Conclusion
 

 So where does that leave this convoluted case? Despite the conflicting evidence, there is no genuine issue of material fact as to the validity of the deed. The deed is void, whether due to notarization by Patricia Quinn if the deed was to her and her husband or due to the fact that the deed was materially altered after execution without plaintiff's knowledge or consent. Either way
 
 *129
 
 it is not valid as between plaintiff and defendants and case law regarding later changes to the grantees with the grantor's knowledge is inapplicable. However, we must reverse the trial court's order granting summary judgment in favor of defendants because there is a genuine issue of material fact as to whether defendants acquired
 
 *386
 
 title to the land by adverse possession under color of title. In addition, if a jury were to determine that defendants did not acquire title by adverse possession, defendants' counterclaims for unjust enrichment and betterments must then be determined. For the foregoing reasons, we reverse and remand.
 

 REVERSED and REMANDED.
 

 Judge HUNTER, JR. concurs.
 

 Judge BRYANT concurs in the result only.
 

 [1]
 

 Other individuals are involved, at times, as grantors and grantees on the deeds discussed, but because their involvement is not at issue, we limit listing grantors and grantees to those individuals necessary for an understanding of this case.
 

 [2]
 

 Although this fact is directly contrary to defendant Patricia Quinn's own emphatic and repeated deposition testimony, defendant-appellees' brief states that "Appellant ... executed the deed ... to Appellees." The recorded deed was notarized by Appellee Patricia W. Quinn. Thus, the facts as argued in defendants' brief contradict both defendants' answer and defendant Patricia Quinn's deposition which both assert that plaintiff signed and defendant Patricia Quinn notarized a deed to Thomas Quinn. For purposes of our discussion, we are using the version of the facts presented by defendants' pleadings and defendant Patricia Quinn's deposition, instead of the one argued by defendants' counsel in defendants' brief, although in the end, the result is the same either way.
 

 [3]
 

 The order dismissing plaintiff's claim for declaratory judgment was not appealed, and we have been unable to discern to what effect, if any, this order has upon the case. It is not clear why the trial court dismissed the declaratory judgment claim, while thereafter ruling upon other claims based upon all of the same factual and legal allegations. It seems that both the trial court and parties disregarded the labels of the claims in the complaint and simply addressed the legal dispute as to the validity of the deed.
 

 [4]
 

 The trial court granted summary judgment in favor of defendants on plaintiff's claim titled "EJECTMENT." We assume that what plaintiff meant by ejectment is a request for the trial court to order defendants to vacate the property upon determining that plaintiff owed it. However, ejectment would actually seem to be a remedy and not a claim; furthermore, this remedy is only appropriate in the context of a landlord-tenant relationship.
 
 See
 

 Adams v. Woods,
 

 169 N.C.App. 242
 
 , 244,
 
 609 S.E.2d 429
 
 , 431 (2005) ("The summary ejectment remedy provided for in N.C. Gen.Stat. § 42-26 is restricted to situations where the relationship of landlord and tenant exists. The district court has jurisdiction to hear a summary ejectment proceeding even if the plaintiff does not allege a landlord-tenant relationship in the complaint, but this relationship must be proven in order for the plaintiff's remedy to be granted. If the record lacks evidence to support a finding of a landlord-tenant relationship, the court must dismiss the plaintiff's cause of action." (citations omitted)).
 

 [5]
 

 Adverse possession without color of title requires 20 years of possession.
 
 See
 
 N.C. Gen.Stat. § 1-40 (2013).